**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 8 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

GREGORY S. SHEALY,

      Petitioner-Appellant,

v.

REGINA E. SHEALY,

      Respondent-Appellee,

No. 01-1365

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 01-D-972)**

---

Stephen J. Cullen of Miles & Stockbridge P.C., Baltimore, Maryland (Jamison G. White of Miles & Stockbridge P.C., Baltimore, Maryland; and Murray Ogborn and David Laird of Ogborn, Summerlin & Ogborn L.L.C., Denver, Colorado, with him on the briefs), for Petitioner-Appellant.

Captain Greg B. O'Dea, Office of the Staff Judge Advocate, Fort Carson, Colorado, for Respondent-Appellee.

---

Before **SEYMOUR** and **HENRY**, Circuit Judges, and **OBERDORFER**,[*] District Judge.

---

**SEYMOUR**, Circuit Judge.

---

[*]The Honorable Louis F. Oberdorfer, District Judge, United States District Court for the District of Columbia, sitting by designation.

This case concerns whether Sierra Shealy, daughter of Mr. Gregory Shealy and Sgt. Regina Shealy, should be returned to Germany from the United States pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, *opened for signature* Oct. 25, 1980, T.I.A.S. 11,670; *instrument of U.S. ratification deposited* April 29, 1988, S.Treaty Doc. No. 99-11, reprinted in 19 I.L.M. 1501 (1980) (hereinafter Hague Convention or Convention). The German court, where the parties are engaged in a custody dispute over Sierra, found that her removal to the United States by Sgt. Shealy did not violate the terms of that court's interim custody order. The district court in the instant action, in ruling on Mr. Shealy's Hague Convention claim, determined Sgt. Shealy's removal of Sierra was not wrongful. For the reasons set out below, we affirm.

## I

Mr. Shealy and Sgt. Shealy are United States citizens who were married in the United States. Their only child, Sierra Hope Shealy, was born in the United States on May 22, 1996. The following year Sgt. Shealy, a dental technician in the U.S. Army, was assigned to a three-year tour in Germany. Sgt. Shealy's family accompanied her to Germany pursuant to a command sponsorship, whereby the Army allows the family of personnel to accompany soldiers abroad and use

Army facilities contingent upon the service member's continued presence in the country. Sierra and her parents lived on the Army base in Germany for approximately three and a half years prior to the events around which this appeal revolves.

While living in Germany, the couple's marriage fell apart. Sgt. Shealy began divorce proceedings in German family court and sought sole custody of Sierra. Mr. Shealy, also submitting to the jurisdiction of the German courts, filed for domicile determination rights and custody of Sierra. The German family court issued a decision on July 26, 2000, temporarily granting domicile determination rights to Sgt. Shealy. Aplt. App. at 466-69.[1] The decision included a non-removal (or *ne exeat*) clause barring Sgt. Shealy from taking the child out of Germany without her father's consent, "unless this should become necessary for military reasons." *Id.* at 466.

On February 14, 2001, the family court ordered that an opinion be obtained from a court-appointed social worker in an effort to determine which parent should have custody. Sgt. Shealy and Sierra were scheduled to meet with a social worker for an interview the following month. One week after the family court order, Sgt. Shealy requested curtailment of her German assignment, admittedly in

---

[1] Certified translations were provided by the parties and citations are to those translations rather than the original court decisions.

order to avoid the jurisdiction and decision of the German family court. On March 14, the Army authorized Sgt. Shealy to report to her new post at Ft. Collins, Colorado. Five days after receiving her orders, and one day prior to their appointment with the social worker, Sgt. Shealy removed Sierra from Germany and brought her to the United States. She notified neither Mr. Shealy nor the family court prior to carrying out her actions. She also dismissed her German divorce proceeding and subsequently filed for divorce in Alabama.

Shortly after Sgt. Shealy's removal of Sierra, the German family court issued a ruling declaring that the removal constituted a violation of Mr. Shealy's custody rights. *Id.* at 475. The court's holding was based on its view that unilateral removal of the child was not necessary for military reasons as required by its prior order. The necessity would not occur, it held, until the "drop-dead" return date set by the military, which the court understood to be sometime in April.[2] *Id.*

Sgt. Shealy appealed the family court ruling to the regional court. That court annulled the family court ruling on June 19, 2001, holding that the transfer *was* necessary for military reasons.

> It is true that she moved the child to the United States somewhat earlier than *absolutely* necessary. At the present time it can no

---

[2] In fact, Sgt. Shealy's orders set a final report date of July 31, 2002. Aplt. App. at 486.

longer be assumed that she arranged the child's residence in the US illegally, since she will have to be in the United States anyway for military reasons as of the end of July 2001.

*Id.* at 480-81 (emphasis added). Although Sierra is no longer in Germany, the custody proceeding remains open pending the return of Sierra to Germany.

While Mr. Shealy's complaint regarding Sgt. Shealy's removal of Sierra was pending in the German courts, he filed an emergency petition in federal court in Colorado, asserting the removal violated the German family court's order and Mr. Shealy's custody rights under the German Civil Code. The petition sought an order returning Sierra to her "habitual residence" in Germany under the Hague Convention, to which the United States is a signatory, and the International Child Abduction Remedies Act (ICARA), 42 U.S.C. §§ 11601 to 11610, this country's legislation implementing the Convention.

Relying on decisions from other circuits, the district court found that Sierra was a habitual resident of Germany. Aplt. App. at 330-31 (*citing Miller v. Miller*, 240 F.3d 392, 400 (4th Cir. 2001); *Shalit v. Coppe*, 182 F.3d 1124, 1128 n.5 (9th Cir. 1999); *Feder v. Evans-Feder*, 63 F.3d 217, 224 (3rd Cir. 1995); *Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1993) (*Friedrich I*)). Citing German law, the court found that because the family court order of July 26, 2000, was a temporary ruling giving Sgt. Shealy no more than domicile determination rights, Mr. Shealy retained joint custody rights that he was exercising with respect to his

daughter. Aplt. App. at 332. However, the district court found that Sgt. Shealy's removal of Sierra was not wrongful because it did not breach Mr. Shealy's custody rights under German law. The non-removal clause contained in the German family court's July 26, 2000 order allowed for removal of the child if a military necessity existed. The district court, although troubled by the timing of Sgt. Shealy's departure from Germany, found a military necessity existed at the time Sgt. Shealy removed Sierra to the United States. In this respect, the court relied upon testimony from the chief of personnel reassignments at Ft. Carson regarding the nature of military reassignment orders, and Sgt. Shealy's testimony regarding her understanding of the German family court's order. Most importantly, the court based its decision on the findings of the German appellate court that Sgt. Shealy's departure with Sierra was necessary for military reasons. *Id.* at 336.

On appeal, Mr. Shealy challenges the district court's order on two grounds. First, he contends the court erred in concluding that Sierra's removal was not "wrongful" because it was justified by military necessity. Second, he asserts the right to determine the child's residence vested the German family court with a right of custody over the child and therefore the German court's rights were violated by Sgt. Shealy's removal of Sierra from Germany.

## II

Our decision in this case is governed by the Hague Convention and the International Child Abduction Remedies Act. In an action pursuant to ICARA and the Hague Convention, we review the district court's findings of fact for clear error and its conclusions regarding principles of domestic, foreign, and international law *de novo*. *See Miller*, 240 F.3d at 399 (citing *Friedrich v. Friedrich*, 78 F.3d. 1060, 1064 (6th Cir. 1996)(*Friedrich II*)).

The Convention and ICARA serve, in part, to prevent parents from abducting children in order to avoid the jurisdiction of courts with whose rulings they do not (or believe they will not) agree. The treaty and legislation seek to "preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court." *Friedrich I,* 983 F.2d at 1400; *see also* Karin Wolfe, *A Tale of Two States: Successes and Failures of the 1980 Hague Convention on the Civil Aspects of International Child Abduction in the United States and Germany*, 33 N.Y.U. J. OF INT'L L. & POL. 285, 299 (2000) (The convention "is intended as a rapid remedy for the left-behind parent to return to the status quo before the wrongful removal or retention."). Our scope of inquiry under the Hague Convention "is limited to the merits of the abduction claim." *Miller*, 240 F.3d at 398 (citing ICARA, 42 U.S.C. § 11601(b)(4)). As such, the merits of the underlying dispute related to custody of Sierra are not

before us.  *Id.*

In a case arising under ICARA and the Hague Convention, the district court must determine whether the removal of a child was "wrongful" under the definition set forth in the Convention.  The removal or retention of a child is wrongful where "it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention," where such rights were actually exercised by the parent seeking return of the child.  Hague Convention, art. 3.  The petitioner bears the burden of showing by a preponderance of the evidence that the removal or retention was wrongful.  42 U.S.C. § 11603(e)(1)(A); *see Feder*, 63 F.3d at 222.  More specifically, the petitioner must show that: (1) the child was habitually resident in a given state at the time of the removal or retention; (2) the removal or retention was in breach of petitioner's custody rights under the laws of that state; and (3) petitioner was exercising those rights at the time of removal or retention.  *See Miller*, 240 F.3d at 398 (citing the Hague Convention, art. 3).

.

## A

In the case before us, the district court determined that Sierra Shealy was habitually resident in Germany at the time Sgt. Shealy removed her to the United

-8-

States. Sgt. Shealy has not appealed that determination. Nor do the parties dispute that Mr. Shealy was exercising custody rights prior to the time Sgt. Shealy removed Sierra to the United States. The key issue raised by Mr. Shealy's appeal is thus whether the district court erred in determining Sgt. Shealy's removal of Sierra to the United States was not in breach of Mr. Shealy's custody rights under German law, and thus not wrongful under the terms of the Hague Convention and ICARA.[3]

In his brief on appeal, Mr. Shealy relies heavily upon cases in this and other countries where custody orders included *ne exeat* clauses barring parents from removing a child to another country without permission. *See Croll v. Croll*, 229 F.3d 133 (2d Cir. 2000), *cert. denied*, 122 S.Ct. 342 (2001); *In re F* [1995] Fam. 224, 229-30 (C.A.) (Eng.) (quoting *In re B* [1994] 2 F.L.R. 249, 260 (C.A.) (Eng.)); *Thomson v. Thomson*, [1994] 119 D.L.R. (4th) 253, 274 (Can.)*; B. v. B.* [1993] Fam. 32, 38 (C.A.) (Eng.); *C. v. C.* [1989] 1 W.L.R. 654, 658 (C.A.)

---

[3] Mr. Shealy also maintains the interim order vested the German courts with rights of custody under the convention and that these rights were breached when Sgt. Shealy removed Sierra from Germany. We need not determine whether Mr. Shealy may seek return of Sierra by making a wrongful removal claim based on the violation of the custody rights of a party other than himself. Even assuming Mr. Shealy were able to petition on behalf of the German court, his claim would fail. Because the German court determined a military necessity did in fact exist, any rights the court arguably had relevant to Article 3(a) of the Convention were not violated by Sgt. Shealy's removal of Sierra to the United States and the removal was thus not wrongful.

(Eng.). This case differs from that authority for a key reason: the interim German family court decision permitted Sgt. Shealy to remove Sierra *without* Mr. Shealy's permission if "this should become necessary for military reasons." Aplt. App. at 466. If a military necessity did exist, then there was no violation of the *ne exeat* order or, accordingly, of Mr. Shealy's custody rights under German law.

The only question for us to determine, then, is whether the district court erred in finding a military necessity did in fact exist. Mr. Shealy challenges the district court's determination regarding military necessity. He contends that instead of a military necessity, Sgt. Shealy "intentionally, knowingly and *voluntarily*" manipulated the U.S. Army to obtain an immediate and early curtailment of her military duties in Germany. Aplt. Br. at 22. In essence, he maintains that to the extent a military necessity existed, it was created by Sgt. Shealy to defeat the intent of the German court order. In the district court, Mr. Shealy bore the burden of establishing, by a preponderance of the evidence, that Sierra's removal was wrongful. 42 U.S.C. § 11603(e)(1)(A). Whether or not a military necessity existed is a finding of fact that we review for clear error. *Miller*, 240 F.3d at 399.

The district court's findings regarding "military necessity" relied upon expert testimony on military reassignments. The expert testified that when a soldier gets reassignment orders, it becomes a military necessity for them to

report once those orders are issued. This is especially so when the orders authorize early report to the new assignment. While Sgt. Shealy was not *required* to report until July 31, 2001, soldiers are "encouraged to and generally have to" report early in order to complete all of the tasks required to settle in the new post. The district court also relied upon Sgt. Shealy's own testimony that she understood she needed to report to Fort Carson as quickly as possible. Finally, the court relied upon the June 19, 2001 ruling by the German regional court that Sgt. Shealy's removal of Sierra was justified by military necessity and that the removal was not unlawful under German law.

Like the district court, we are concerned by Sgt. Shealy's actions in removing Sierra from Germany. Evidence presented to the district court demonstrates the extent to which Sgt. Shealy helped manufacture the necessity. In her request for curtailment of her assignment, she plainly states that she wished to avoid what she predicted would be a court decision granting custody of Sierra to Mr. Shealy. Aplt. App. at 484-485. Because of her circumstances as a member of the armed forces, Sgt. Shealy was able to manipulate the system and accomplish what the Hague Convention was created to prevent: a parent removing a child from a country in order to avoid the jurisdiction of local courts. Nonetheless, we are unable to conclude the district court erred in finding as it did. There is ample evidence to support the court's finding that a military necessity

did in fact exist and its conclusion that Mr. Shealy did not carry his burden to prove the removal was wrongful. Suffice it to say here that once the military order issued, there was a military necessity within the meaning of the German family court's interim order. The military's reason for issuing the order is irrelevant. Like the district court, we are most persuaded by the German regional court's ruling because it interpreted the law of Germany. The regional court held that the transfer orders made the removal a military necessity and was thus an acceptable ground for removal pursuant to the terms of the family court's July 6, 2000 order. We decline to second guess the German court under these circumstances. The district court's determination is not clearly erroneous.

**III**

Mr. Shealy contests the district court's ruling on another ground, contending it misinterpreted the Convention by resting its decision on the interim custody ruling of the German court that awarded the right to determine residence to Sgt. Shealy. Mr. Shealy argues the district court erred in finding that a *temporary* or interim order pertaining to domicile determination could legitimize an action by Sgt. Shealy that violated the joint custody rights he retained under German law. Aplt. Br. at 19.

The Convention is very clear that the law of the country in which the child

was habitually resident governs decisions as to whether custody rights existed at the time of removal. German law gives both parents equal *de jure* custody of a child, custody which continues with few exceptions until a competent court says otherwise. *See Friedrich II*, 78 F.3d at 1064 (citing German Civil Code 1621(1)). Mr. Shealy maintains that the July 6, 2000 ruling giving Sgt. Shealy the right to determine residence did not constitute a ruling on the full range of custody rights such that it would alter joint custody under the German Civil Code. Relying on a treatise on the Convention, Mr. Shealy suggests that interim decisions cannot be used to justify a child's removal. "'[W]ere temporary orders of this type to be included [under Article 3(2)], a parent could be deprived of the Convention remedy without the merits of the custody issue having been fully investigated.'" Aplt. Br. at 19-20 (quoting PAUL R. BEAUMONT & PETER E. MCELEAVY, THE HAGUE CONVENTION ON INTERNATIONAL CHILD ABDUCTION 51 (1999)). Yet, immediately following the passage quoted by Mr. Shealy, the treatise concludes, "Therefore, *unless an express declaration is made to the contrary,* it is submitted that a provisional award of sole custody should not be recognised as allowing a parent to remove a child to. . . a foreign jurisdiction." BEAUMONT & MCELEAVY at 51-52.

Mr. Shealy is correct that the German courts have not yet made a final determination on the custody of Sierra. Our opinion here does not in any way

-13-

preempt or replace any final custody decision over which the German court may have retained jurisdiction. For our purposes in determining the Hague Convention claim, however, the interim decision of the German court is dispositive. While that decision did not rule on the full bundle of custody rights Mr. Shealy may have under German law, it is determinative in our decision as to whether Sgt. Shealy's action represented a wrongful removal. The interim decision delineated the status quo in the period between the instigation of the action and a final determination by the court. In many ways it served the same purpose as an injunction, setting terms for all parties to follow while awaiting final judgment in the action. It thus granted Sgt. Shealy the right to remove Sierra from Germany should military necessity require. While the ruling was temporary, it nevertheless delineated the rights of both parents in the period between the filing of the complaint and a final decision by the court.

We **AFFIRM** the judgment of the district court.