**Oscar Manuel Reyes PASTÉN,
Petitioner,**

v.

**Flavia Cecilia Ruiz VELÁSQUEZ,
Respondent.**

**Civil Action No. 2:06cv832–MHT.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 27, 2006.

Opinion Denying Extension
of Time Dec. 1, 2006.

Benjamin Max Bowden, Albrittons Clifton Alverson Moody & Bowden, PC, Andalusia, AL, Dolores Cavatore, Scott R. Dayton, Sylvia Mayer, Weil, Gotshal & Manges LLP, Houston, TX, for Petitioner.

Boyd F. Campbell, Boyd F. Campbell, P.C., Montgomery, AL, for Respondent.

## OPINION

MYRON H. THOMPSON, District Judge.

In this lawsuit, petitioner Oscar Manuel Reyes Pastén asks that this court require respondent Flavia Cecilia Ruiz Velásquez to return their daughter RMRV from Alabama to Chile, pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 1988 WL 411501, and implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11611. This court has jurisdiction under 42 U.S.C. § 11603 and 28 U.S.C. § 1331. At the end of a hearing held on October 11, 2006, and based on the evidence presented and arguments of counsel for the parties, the court orally granted in part Reyes's requested relief; the court promised that a written opinion and judgment would follow. This is the promised opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

RMRV was born to Reyes and Ruiz in 1998. The two were never married, and they terminated their relationship in 2000. Since then, Ruiz married an American citizen. Reyes still resides in Chile.

Ruiz lived in Chile until late 2003, when she and RMRV came to the United States, ostensibly so that Ruiz could enroll in oceanography school at Texas A & M University. Under Chilean law, Ruiz could not remove RMRV from Chile without Reyes's permission, which he declined to give. Therefore, before leaving Chile, Ruiz sought, and a Chilean court granted, permission to bring her daughter to the United States for three years, during her enrollment in the oceanography school. However, Ruiz never attended the university; instead, sometime in 2006, she moved to Alabama. She did not notify Reyes or the Chilean court.

Upon learning that Ruiz had moved to Alabama, Reyes filed a petition in this court for the return of RMRV to Chile based on the Hague Convention. Out of concern that Ruiz would further flee with RMRV, this court immediately issued a restraining order prohibiting the removal of RMRV from this court's jurisdiction until Reyes's petition could be heard on the merits. At the hearing on the matter on October 11, 2006, Ruiz expressed that she intends to take RMRV, permanently, to live in Australia. She said that she had already initiated legal proceedings in Chile, seeking permission to take RMRV there.

At the end of the hearing, the court orally held that, by taking RMRV from Texas to Alabama, Ruiz had exceeded the limitation placed on her by the Chilean court and had, thereby, violated Reyes's custody rights under the Hague Convention. The court required that Ruiz take RMRV back to Chile. However, in order to allow resolution of Ruiz's request to the Chilean courts to take RMRV to Australia, this court gave Ruiz approximately 45 days to return RMRV to Chile. Also, out of concern that Ruiz might flee with RMRV pending resolution of her new litigation in Chile, the court required that Ruiz turn over her passport to the court and not take RMRV out of the jurisdiction of the court without its permission. As stated, the court promised that a written opinion and judgment would follow.

## II. DISCUSSION

The Hague Convention on the Civil Aspects of International Child Abduction has the stated purpose of "protect[ing] children internationally from the harmful effects of their wrongful removal or retention and establish[ing] procedures to ensure their prompt return to the State

of their habitual residence, as well as to secur[ing] protection for rights of access." Hague Convention, introduction.

■ The purpose of the Convention is not to adjudicate custody rights in the State to which the child was removed, but rather "to return to the status quo before the wrongful removal or retention." *Ruiz v. Tenorio*, 392 F.3d 1247, 1250 (11th Cir. 2004) (quoting *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir.2002)). To that end, the Convention establishes, among other things, a remedy of return to the "State of habitual residence" of the child. Hague Convention, Arts. III, XII.

Article III of the Hague Convention sets forth the standards for determining whether a case of wrongful removal has been made out such that the child must be returned to the State of habitual residence. Hague Convention, Art. XII. That Article provides that:

> "The removal or the retention of a child is to be considered wrongful where—a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention."

Hague Convention, Art. III.

■ As this language makes clear, there are three elements to be examined by a court here. First, a court should determine where the child was habitually a resident immediately before the purportedly wrongful removal. Second, the court should determine whether the complaining party had a right of custody under that country's law, and whether the respondent violated that right of custody by removal. Third, the court should determine whether the right was being exercised at the time of the removal or would have been exercised but for the removal.

### 1. Habitual Residence

■ Neither the Hague Convention nor its implementing legislation defines "habitual residence." The Eleventh Circuit, however, recently considered the issue in *Ruiz v. Tenorio*, 392 F.3d 1247 (11th Cir. 2004). In that court's view, the "crucial factor" in establishing habitual residence is that "the person or persons entitled to fix the place of the child's residence" have "form[ed] a settled intention to abandon the [place] one left behind." 392 F.3d at 1253. Under Chilean law, Reyes and Ruiz were jointly entitled to fix the child's residence, but they did not "settle" any intention that RMRV would abandon Chile. Reyes has, at all times relevant here, strenuously objected to RMRV's removal from Chile.

Further, whatever Ruiz's later-developed or concealed intention, she represented to the Chilean court, and RMRV's removal was premised on, her intention to return to Chile after a period of three years. Thus, here there was not a settled intention to abandon Chile on the part of both of those entitled to fix the place of residence. Chile, and not the United States, is therefore the habitual place of RMRV's residence.

### 2. Right of Custody and Violation Of Right of Custody

■■ Whether a right of custody exists is to be determined by reference to the law of the country of habitual residence. Hague Convention, Article III(a).[1] Under

---

1. At the outset, it is important to note that the Hague Convention distinguishes between rights of custody and rights of access; only in the event of a breach of a right to custody will removal of the child be appropriate. *Com-*

the law of Chile, and under the Chilean court's decision on RMRV's custody, Reyes's custody rights have been violated.

Chile grants a non-custodial parent a *ne exeat* right: the right to determine whether the child will leave the country. Admittedly, Ruiz was granted conditional permission by order of a Chilean court to leave the country. Reyes argues, however, that violation of the conditions of the Chilean court's order can be a violation of his *ne exeat* right. Reyes is correct.

Under Chilean law, although when parents live separately Chile vests the responsibility for personal care of the child in the mother,[2] a non-custodial parent still has a *ne exeat* right.[3] In interpreting the Hague Convention, the Eleventh Circuit has held that violation of the *ne exeat* right is enough to qualify as a violation of custody rights. In *Furnes v. Reeves*, 362 F.3d 702 (11th Cir.2004), the appellate court found that the *ne exeat* right was a "custody right" within the meaning of the Hague Convention. Custody under the Convention, the court further explained, does not mean the right to possess the child or physical control over the child; rather, certain rights of control will qualify as custody rights. 362 F.3d at 714. The court cited the Hague Convention for the proposition that those rights are those "relating to the care of the person of the child" and, in particular, the right to determine the child's place of residence. *Id.* at 714, 716 (quoting Hague Convention, Art. V(a)). The court said that the *ne exeat* right was exactly such a right: a right to determine where the child will live, even if, as was the case in *Furnes*, the country of habitual residence grants only the right to

veto exit from the country, and not the right to determine where within the country of habitual residence the child will live. *Id.*

On the issue of whether Reyes's right was violated, this case is similar to the one confronted by the South African Constitutional Court in *Sonderup v. Tondelli*, 2000(1) Constitutional Court of South Africa 1171(CC). In that case, which was cited with approval by the Eleventh Circuit in *Furnes*, the South African court held that a father's *ne exeat* right was violated because the mother of the child had violated an order issued by the country of habitual residence. The order provided that the mother was allowed to leave with the child for one month; the mother, however, did not return to the country of habitual residence after a month. After finding that the court's order gave the father a *ne exeat* right, the court there concluded that, "[The mother's] failure to return ... with the child [after a month] was a breach of the conditions upon which she was entitled to exercise her rights of custody and a concomitant breach of the father's rights under the agreement and order." *Sonderup*, 2000(1) Constitutional Court of South Africa 1171 ¶ 25. Here, the situation is similar: a breach of the court's order granting the mother a right to remove is a breach of the father's custody right.

Ruiz's violation of the Chilean court's order amounts to a violation of Reyes's *ne exeat* right. The Chilean court determined that Reyes had a legitimate *ne exeat* right, but that Ruiz could leave the country *under certain conditions* without violating that right. Thus, the Chilean court limited Reyes's *ne exeat* right, but

---

pare, Hague Convention Art. XI (relating to custody right) *and* Hague Convention Art. XXI (relating to rights of access).

**2.** Pet. For Return of the Child (Doc. No. 1–13), Chilean Code, § 225.

**3.** *Id.* (Doc. No. 2–3), Chilean Court Decision ¶ 18 (discussing § 49 of the juvenile code).

only to the degree that it allowed Ruiz to take RMRV to Texas so that Ruiz could study oceanography. Because those conditions have been violated, Ruiz is no longer within the boundaries of Reyes's right, set forth in the Chilean court's opinion. That is, to whatever extent Reyes's right to prohibit RMRV's exit from the country was limited by the Chilean court's opinion, Ruiz is beyond the limit of that right in going beyond the court's order.

### 3. Exercise of Custody Rights

■ The third condition is that the right in question was being exercised at the time of removal, or would have been but for the removal. It is clear that Reyes sought to exercise the *ne exeat* right within the meaning of the Hague Convention. Before the removal, Reyes has sought to prevent removal through the exercise of his *ne exeat* right. As in *Garcia v. Angarita*, 440 F.Supp.2d 1364 (S.D.Fla.2006) (Huck, J.), which considered the "exercise" of the *ne exeat* right, because, "[a]t the outset, [the mother] recognized that the children could not travel abroad without [the father's] consent, and [because] he gave his consent to international travel only for [a] limited purpose," there "can be no question that [the father] was actually exercising his custody rights." 440 F.Supp.2d at 1379. What happened between Reyes and Ruiz is similar: Ruiz, the mother, had to seek consent from Reyes, the father, to remove their child; however, Reyes strenuously disagreed. Like the father in *Garcia*, Reyes sought to retain control over the place of residence, even if the children were, at the outset, legitimately removed.

\* \* \* \* \* \*

The court, therefore, holds that Ruiz wrongfully removed RMRV within the meaning of the Hague Convention. The court will therefore memorialize the oral order entered on October 11, 2006, by entering a written judgment and injunction as follows: The court will require that Ruiz take RMRV back to Chile, but, so as first to allow resolution of Ruiz's pending request to the Chilean courts to take RMRV to Australia, this court will give Ruiz until November 28, 2006, to return RMRV to Chile. Also, out of concern that Ruiz might flee with RMRV pending resolution of her new litigation in Chile, the court will continue to prohibit Ruiz from removing RMRV from the jurisdiction of this court without this court's permission and will keep Ruiz's passport until she files with the court a copy of her plane ticket and an affidavit reflecting that, and explaining why, she needs her passport to carry out immediately the judgment and injunction entered today. To the extent the written judgment and injunction entered today conflict with the oral order, the written judgment and injunction control.

### JUDGMENT AND INJUNCTION

In accordance with the memorandum opinion entered this date, it is the ORDER, JUDGMENT, and DECREE of the court:

(1) Petitioner Oscar Manuel Reyes Pastén's petition for the return of a child under the Hague Convention on the Civil Aspects of International Child Abduction (Doc. No. 1) is granted.

(2) It is DECLARED that respondent Flavia Cecilia Ruiz Velásquez wrongfully removed RMRV in violation of petitioner Reyes's custody rights under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 1988 WL 411501, and implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11611.

(3) Respondent Ruiz, her officers, agents, servants, employees, and attor-

neys, and those persons in active concert or participation with them who receive actual notice of this injunction and judgment by personal service or otherwise, are each jointly and separately ENJOINED and RESTRAINED from (a) removing RMRV from the jurisdiction of this court except as otherwise set forth in this judgment and injunction and (b) failing, by no later than November 28, 2006, to return RMRV to Chile, unless on or before that date she receives written permission from an appropriate Chilean court to continue to keep RMRV outside Chile.

(4) On or before November 29, 2006, counsel for respondent Ruiz is to file with the court a statement confirming that respondent Ruiz has complied with the judgment and injunction entered this date.

(5) Upon presentation to this court of a copy of the plane ticket and an affidavit from respondent Ruiz reflecting that, and explaining why, respondent Ruiz needs her passport to carry out immediately the judgment and injunction entered today, the court will return respondent Ruiz's passport to her and will dissolve the prohibition that respondent Ruiz not take RMRV out of the jurisdiction of the court.

(6) If, for good cause shown, respondent Ruiz is unable to secure, in a timely manner and through no fault of her own, a written decision from an appropriate court in Chile on her request to continue to keep RMRV outside of Chile, she may petition this court for an extension of the appropriate deadlines in this judgment and injunction.

It is further ORDERED that costs are taxed against respondent Ruiz, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

OPINION

This lawsuit arises out of a dispute under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, reprinted in 1988 WL 411501, implemented by the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11611. In an opinion entered on October 27, 2006, this federal court agreed with petitioner Oscar Manuel Reyes Pastén that respondent Flavia Cecilia Ruiz Velásquez had, within the meaning of the Hague Convention, wrongfully relocated their minor daughter RMRV to Montgomery, Alabama, and the court required that Ruiz return RMRV to Chile by no later than November 28, 2006. *Pastén v. Valasquez*, 462 F.Supp.2d 1206, 2006 WL 3227258 (M.D.Ala.2006).

 This lawsuit is once again before the court, this time on Ruiz's motion for an extension of time to allow her to return her daughter RMRV to Chile. Reyes opposes the motion. For the reasons that follow, that motion will be denied.

Ruiz and Reyes agree that this court gave Ruiz until November 28 in order to allow resolution of Ruiz's then-pending request in a Chilean court to extend the time she could keep RMRV out of Chile so that she could take her to Australia where Ruiz's husband now lives and works; this court did want to have RMRV returned to Chile, only to have her move again to Australia should the Chilean court grant Ruiz's request. *Pastén*, 462 F.Supp.2d at 1211, 2006 WL 3227258 at *4. The parties also agree that the Chilean court has now denied Ruiz's extension request.

Ruiz argues, however, that the denial of the extension request was procedural and not on the merits; indeed, the Chilean court denied the request "without prejudice," stating that "the decision to extend a previous decision that was already execut-

ed cannot be granted, but a new authorization could be requested." Petitioner's Opposition to Motion for Extension of Time, Exhibit 1, Record of Chilean Court Proceeding (English translation), 3. Ruiz says that she intends to file a new and separate petition in a few days. Ruiz further argues that requiring that she take back RMRV back to Chile to resolve her custody dispute with Reyes would place a severe financial burden on her.

Reyes responds that Ruiz has now had a month and a half to have the Chilean courts resolve the question of whether she should be allowed to take RMRV to Australia; that a Chilean court has now denied her request; and that it is now time for his rights under the Convention to be vindicated. He also complains that, when he was allowed to see RMRV immediately after the trial, it was only in the presence of Ruiz's family members and that since then he has been prohibited from having any direct contact with RMRV. He says he has yet to enjoy, as a parent, the company of his child and that, as things now stand, he will not be able to enjoy the privileges of fatherhood with his daughter over the upcoming Holiday Season.

The characterization of the Chilean order is, at this juncture, not dispositive. More important is that the parties' arguments about why the Ruiz's extension request to this court should be granted or denied clearly demonstrate that this court is now being sucked into a custody dispute (albeit perhaps a temporary, as opposed to a permanent, one) under Chilean law, and, under the Convention, this is not this court's role. This court, having now made its decision under the Convention, is being asked to decide who should have "temporary custody" of RMRV, that is, custody while Ruiz seeks relief in the Chilean courts to take RMRV to Australia, and, as demonstrated above, both Ruiz and Reyes make compelling arguments. The difficult

and heartrending questions (about parental privileges, relative hardships, financial and otherwise, and, above all, what is in RMRV's best interest) are classic child-custody issues and are simply for the Chilean courts, not this court, to answer.

As this court noted in its earlier decision in this case, "the purpose of the Convention is not to adjudicate custody rights in the State to which the child was removed, but rather 'to return to the status quo before the wrongful removal or retention.'" *Pastén,* 462 F.Supp.2d at 1209, 2006 WL 3227258 at *2 (quoting *Ruiz v. Tenorio,* 392 F.3d 1247, 1250 (11th Cir.2004)). In other words, the purpose of the Convention is "to ensure that the rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, Art. I. This court's sole function, therefore, is to determine whether Reyes's rights under the Convention have been violated, and, if so, whether the child should be returned to her country of habitual residence. *Pastén,* 462 F.Supp.2d at 1208–1209, 2006 WL 3227258 at *2. This court is therefore prohibited, by the Convention, from functioning as a stand-in for the Chilean court properly vested with authority over RMRV's parents' dispute over custody, whether temporary or permanent.

Finally and perhaps most importantly, the Convention provides that, "Where a child has been wrongfully removed or retained [within the meaning of the Convention] ... the authority concerned *shall* order the return of the child *forthwith.*" Convention, Art. XII (emphasis added). Under the Convention, this court, having found that RMRV was wrongfully relocated to Alabama, must now return RMRV to Chile "forthwith." The difficult questions as to who should have RMRV and where RMRV should reside while the Chilean courts resolve Ruiz's so-called anticipated

petition to take RMRV to Australia are for the Chilean courts. With RMRV's return to Chile these questions will follow her to be resolved there.

This court will therefore deny Ruiz's extension motion. The court will also modify its earlier injunction to allow Reyes to come to Montgomery, Alabama to take RMRV back to Chile himself. While Ruiz may accompany Reyes and RMRV back to Chile, the court believes, and so finds after further reflection and in light of Ruiz's past actions secreting RMRV, that there is a strong likelihood that Ruiz will flee with RMRV to Australia or another country other than Chile if she is allowed to accompany RMRV back to Chile by herself.

An appropriate supplemental judgment and injunction will be entered.