**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN NAVANI,

      Petitioner-Appellee,

v.

BINA SHAHANI,

      Respondent-Appellant.

No. 06-2159

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CV-06-0191-WE-JH)**

Eric S. Treisman, Santa Fe, New Mexico, for Respondent-Appellant.

Gretchen M. Walther, Walther Family Law, P.A., Albuquerque, New Mexico, for Petitioner-Appellee.

Before **BRISCOE, SEYMOUR,** and **MURPHY**, Circuit Judges.

**BRISCOE**, Circuit Judge.

      Bina Shahani appeals the district court's order granting John Navani's petition that

their son be returned to England, the child's country of habitual residence, pursuant to the

Hague Convention on the Civil Aspects of International Child Abduction and its implementing legislation, the International Child Abduction Remedies Act. The district court concluded that Shahani wrongfully retained the boy in the United States without Navani's consent in violation of his rights of custody over the child as defined under English law, and that no exception to the mandatory return remedy under the treaty and statute applied.

During the pendency of this appeal, the English family court with jurisdiction over the child's custodial arrangements issued a new custody order concerning each parent's custodial rights. Navani argues that the new custody order moots Shahani's appeal because it effectively strips Shahani of her custodial rights over the child. We agree with Navani that the new custody order prevents us from granting Shahani any effectual relief and therefore we dismiss her appeal because it fails to present a live case or controversy.

I.

A. *The Hague Convention*

The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 49 ("the Hague Convention") seeks to deter parents who are dissatisfied with current custodial arrangements from abducting their children and seeking a more favorable custodial ruling in another country. Shealy v. Shealy, 295 F.3d 1117, 1121 (10th Cir. 2002). Generally, it creates an international legal mechanism requiring contracting states to promptly return children who have been

wrongfully removed to, or wrongfully retained in, their jurisdiction, without deciding

anew the issue of custody. de Silva v. Pitts, 481 F.3d 1279, 1282 (10th Cir. 2007). A

removal or retention is "wrongful" under the treaty when the removal or retention *"is in*

*breach of rights of custody attributed to a person . . . under the law of the State in which*

*the child was habitually resident immediately before the removal or retention . . . ."*

Hague Convention art. 3.

The International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610

(2007) ("ICARA"), implements the Hague Convention in the United States and grants

federal and state courts "concurrent original jurisdiction of actions arising under the

Convention." 42 U.S.C. § 11603(a). A petitioner who seeks an order returning a child to

his country of habitual residence must show that: "(1) the child was habitually resident in

a given state at the time of the removal or retention; (2) the removal or retention was in

breach of petitioner's custody rights under the laws of that state; and (3) petitioner was

exercising those rights at the time of removal or retention." Shealy, 295 F.3d at 1122

(citation omitted).

B. *Factual and Procedural Background*

Navani and Shahani were married in London, England, on December 14, 1995.

Born on August 4, 1996, Jivan is the couple's only child. Navani and Shahani's marriage

ended in divorce on February 16, 2004. As part of the divorce proceedings, an English

family court issued a custody order ("the original custody order") concerning Jivan, which

-3-

stated in relevant part:

The Court orders that:-

1. the child Jivan NAVANI shall reside with the mother Bina SHAHANI

2. the father John NAVANI shall

    (i) be entitled to all information provided to parents with parental responsibility by Rosemary Works School or any other school attended by the child Jivan NAVANI

    (ii) in particular John NAVANI shall be entitled to have access to the child Jivan NAVANI's attendance records held by Rosemary Works School or any other school the said child attends

3. the mother Bina SHAHANI and the father John NAVANI are prohibited from removing the child Jivan NAVANI from the jurisdiction of the Court, namely England and Wales, without the written consent of the other or order of the court

4. the child Jivan NAVANI shall not be removed from Rosemary Works School without the written consent of the father John NAVANI or order of the court

5. the father John NAVANI shall have contact with the child Jivan NAVANI as follows:

    (i) during school terms, on alternate weekends, staying contact from the end of the school day on Friday to the start of the school day on Monday

    (ii) half of each school holiday, including school half-terms, in the absence of agreement for the first half of each holiday, where the first half if half term does not fall on a term time contact weekend, the holiday arrangement shall prevail if there is a conflict . . . .

Aplt. App. at 13-14.

On August 16, 2004, Shahani made a written request to Navani, pursuant to the

original custody order, asking for his consent to allow the mother and the boy to take a holiday in the United States. After Navani consented, and Shahani failed to return to England on the agreed upon date, Navani contacted English law enforcement. Navani did not see his son again until he located Shahani and Jivan in New Mexico more than a year later.

On March 14, 2006, Navani filed a Hague Convention petition in the District of New Mexico asserting that Jivan had been wrongfully retained in the United States in violation of Navani's custody rights as established by English law. Navani asked the court to order the boy's return to England under the Hague Convention and ICARA. After a one-day trial, the district court granted Navani's petition on March 31, 2006, finding that Shahani had breached Navani's rights of custody under English law by retaining him in the United States, thereby warranting the child's repatriation to England. The district court ordered Jivan's return to England by June 15, 2006, where he now lives. Separately, Navani moved for an award of attorney's fees and costs pursuant to § 11607. In two orders issued on May 30, 2006 and December 5, 2006, the district court partially granted Navani's two motions for fees and costs and awarded him a total of $46,779.99.

Shahani thereafter filed a notice of appeal concerning the district court's March 31, 2006, order granting Navani's petition for an order of return and the district court's May 30, 2006, order denying Shahani's motion for a new trial or to alter or amend the

judgment.[1]  In her opening brief, Shahani generally argued that Navani failed to satisfy his burden under the Hague Convention and ICARA to show that he possesses rights of custody over Jivan, that the one-day trial violated her right to due process of law, and that the district court's order of return was technically deficient because it ordered the child returned to Navani's personal custody rather than to England.  Navani disputed each of these contentions.

On April 30, 2007, a week before the scheduled May 7, 2007 oral argument in this case, Navani filed a motion to dismiss Shahani's appeal as moot based on an order issued by the English family court on March 23, 2007 ("the new custody order").  In pertinent part, the new custody order provides:

> (i) The Mother wrongfully and unlawfully, without the Father's consent or leave of the Court, failed to return [Jivan Navani] to the jurisdiction of England and Wales on the 6th September 2004, and thereafter wrongfully and unlawfully retained Jivan Navani in the United States of America without the Father's consent or leave of the Court, contrary to the terms of the Child Abduction and Custody Act 1984.
>
> . . .
>
> (v) By virtue of his having parental responsibility together with an order for contact (the latter made by Mr. Justice Hedley on 2nd January 2004) the First Respondent Father has and had at all material times equal rights of custody together with the Mother in relation to Jivan, including at the time of his wrongful retention in the United States in September 2004.

---

[1] Shahani's notice of appeal states that she appeals, in part, the "May 26, 2006" order denying reconsideration.  Aplt. App. at 509.  It is clear that Shahani actually means the May 30, 2006, order denying Shahani's motion for a new trial or to alter or amend the judgment.

IT IS ORDERED THAT:-

1. The Residence Order in favour of the Mother, together with all other orders made by the Honourable Mr. Justice Hedley on the 22nd January 2004 and 28th November 2006 be, for the avoidance of doubt, discharged.

2. The child Jivan Navani shall reside with the father John Kishin Navani.

3. The Applicant Mother be forbidden to remove the child Jivan Navani from the care of the First Respondent Father and from the jurisdiction of this Court.

4. The Applicant Mother's applications for a Residence Order and an order permitting her to remove the child Jivan Navani from the jurisdiction of England and Wales be dismissed.

5. There shall be by way of Prohibited Steps Order no direct contact between the Applicant Mother and the child Jivan Navani outside the jurisdiction of England and Wales.

6. The Mother shall have indirect contact with the child Jivan Navani as follows:-

    (i) Telephone contact once per week for a period of thirty minutes at dates and times to be agreed, together with such other indirect contact by telephone letter and presents as is agreed between the parties.

    (ii) Direct supervised contact within the jurisdiction as may be agreed in writing between the parties.

7. The Applicant Mother shall deliver up to the Father's solicitors all travel documents, passports and applications for the same relating to Jivan Navani as may be in her possession.

8. The Mother shall be forbidden to apply for any passport or travel document or for the grant of United States Citizenship or Rights of Abode for Jivan Navani.

Mot. to Dismiss, Ex. A at 2-4. Navani argues that the new custody order moots Shahani's

appeal because it grants primary physical custody to Navani and prohibits returning the child to Shahani's custody. In her response brief to the motion to dismiss and at oral argument, Shahani opposed the motion to dismiss, contending that the new custody order conflicts with English family law, the English family court issued the new custody order without hearing argument from her counsel, and the issue of fees and costs is sufficient in itself to keep her appeal alive.

II.

Before turning to the merits of Shahani's appeal, we must first address Navani's argument that the new custody order moots her appeal. "'The mootness question necessarily constitutes our threshold inquiry, because the existence of a live case or controversy is a constitutional prerequisite to the jurisdiction of the federal courts.'" In re L.F. Jennings Oil Co., 4 F.3d 887, 888 (10th Cir. 1993) (citation omitted). We have no authority "'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" Church of Scientology v. United States, 506 U.S. 9, 12 (1992) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). A case or controversy must remain alive throughout the litigation, including on appellate review. Thournir v. Buchanan, 710 F.2d 1461, 1463 (10th Cir. 1983) (citing Wiley v. Nat'l Collegiate Athletic Ass'n, 612 F.2d 473, 475 (10th Cir. 1979) (en banc)). "[I]f an event occurs while a case is pending on appeal that makes

it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." Church of Scientology, 506 U.S. at 12 (quoting Mills, 159 U.S. at 653). "The central question in determining whether a case has become moot is whether the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Phelps v. Hamilton, 122 F.3d 885, 891 (10th Cir. 1997) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)) (internal quotation marks omitted).

## A.

In the event that we would conclude that the district court erred in granting Navani's Hague Convention petition and in ordering Jivan's return to England, Navani argues that the new custody order nonetheless precludes us from granting Shahani any effectual relief and therefore moots her appeal. Navani argues that the new custody order renders Shahani's appeal moot in two ways. First, the English family court concluded in the new custody order that Shahani wrongfully retained Jivan in the United States in violation of Navani's rights of custody. Navani contends that the English family court's ruling on wrongful retention settles the issue that Shahani raises in this appeal: whether Navani had rights of custody over Jivan sufficient to trigger the Hague Convention's mandatory return remedy. Second, Navani argues that Jivan cannot be ordered to return to Shahani's custody because the English family court has determined that custody should

now be with Navani, not Shahani.

We agree with Navani that the new custody order prevents us from ordering any effectual relief in this appeal. If we conclude that the district court should not have ordered Jivan's return to England because Navani failed to make his threshold showing that he possesses rights of custody over Jivan, the only way to remedy the error would be to order Jivan's return to the United States to be reunited with Navani. Yet the new custody order implicitly prohibits Jivan's return to the United States to live with his mother by forbidding "direct contact between the Applicant Mother and the child Jivan Navani outside the jurisdiction of England and Wales." Mot. to Dismiss, Ex. A at 3. The new custody order forbids Shahani from removing Jivan from his father's care and the jurisdiction of the English family court. Id. Shahani cannot even possess the travel documents, such as Jivan's passport, that would be necessary for international travel. Id. at 4. Further, for us to decide Shahani's appeal we would have to determine whether Navani possessed rights of custody under the original custody order. But interpreting the rights of custody that the parties possessed under the original custody order would be a futile exercise because the new custody order discharges all prior custody orders. Id. at 3. Finally, the new custody order makes clear that contrary to Shahani's argument before the district court and on appeal that Navani had no rights of custody at the time of the alleged wrongful retention, Navani "has and had at all material times equal rights of custody together with the Mother in relation to Jivan, including at the time of his wrongful

-10-

retention in the United States in September 2004." Id. at 2.

Although the Full Faith and Credit Clause does not require us to recognize judgments, such as the new custody order, which are rendered in foreign countries, Soc'y of Lloyd's v. Reinhart, 402 F.3d 982, 994 (10th Cir. 2005), the new custody order should be given effect in American courts for two reasons. First, general principles of comity normally counsel giving "considerable deference" to a foreign judgment. See Miller v. Miller, 240 F.3d 392, 400 (4th Cir. 2001); Diorinou v. Mezitis, 237 F.3d 133, 142 (2d Cir. 2001); see also Hilton v. Guyot, 159 U.S. 113, 163 (1895) ("The extent to which the law of one nation, as put in force within its territory, whether by executive order, by legislative act, or by judicial decree, shall be allowed to operate within the dominion of another nation, depends upon what our greatest jurists have been content to call 'the comity of nations.'"). The English family court's interpretation of its domestic law – that Navani has always possessed rights of custody over Jivan and that Shahani breached those rights of custody by wrongfully retaining Jivan in the United States – is therefore entitled to our respect. See Shealy, 295 F.3d at 1123 (declining to "second guess" a German regional court's interpretation of German domestic law in finding that a parent's removal of a child from Germany was not wrongful because there was a military necessity).

Second, and more fundamentally, factors unique to the Hague Convention suggest that the English family court should be given the final word, through the new custody

-11-

order, in this matter. While Shahani believes that we can review the merits of her appeal without taking the new custody order into account and that the district court can order Jivan's return to the United States in spite of the new custody order's provisions holding otherwise, Aplt. Supp. Response Br. at 5-6, both the letter and spirit of the Hague Convention suggest that the new custody order ends this matter.

As we and our sister circuits have repeatedly explained, the Hague Convention attempts to prevent an international version of forum shopping, wherein a parent dissatisfied with current custodial arrangements flees with the child to another country to re-litigate the merits of custody and to obtain a more favorable custody order. Shealy, 295 F.3d at 1123 (describing "a parent removing a child from a country in order to avoid the jurisdiction of local courts" as "what the Hague Convention was created to prevent"); Hanley v. Roy, 485 F.3d 641, 644 (11th Cir. 2007); Friedrich v. Friedrich, 78 F.3d 1060, 1064 (6th Cir. 1996). The Hague Convention "rests implicitly upon the principle that any debate on the merits of . . . custody rights, should take place before the competent authorities in the State where the child had its habitual residence prior to its removal" because courts in the country of the child's habitual residence are "in principle best placed to decide upon questions of custody and access." Elisa Perez-Vera, Explanatory Report: Hague Conference on Private International Law, in 3 Acts and Documents of the Fourteenth Session (Child Abduction) 426, 430, 434-35, ¶¶ 19, 34 (1981) ("Explanatory

Report")[2]; see also de Silva, 481 F.3d at 1285 n.6 ("'[T]he basic purpose and function of the Hague Convention and ICARA [are to ensure that] the *home* country should make the custody determination whenever possible.'") (citation omitted) (alterations and emphasis in original); Croll v. Croll, 229 F.3d 133, 137 (2d Cir. 2000).  To defeat attempts to re-litigate custody matters in a foreign country, the Hague Convention requires contracting states to respect custody orders issued by the country of the child's habitual residence and forbids contracting states from deciding anew the underlying merits of custody orders. Hague Convention arts. 16, 19; Friedrich, 78 F.3d at 1066 (explaining that "the full resolution of custody issues, as the Convention and common sense indicate," must be left to courts in the country of the child's habitual residence); Blondin v. Dubois, 189 F.3d 240, 248 (2d Cir. 1999) ("[T]he 'whole structure of the Convention' depend[s] on the institutions of the abducted-to state generally deferring to the forum of the child's home state.") (quoting Explanatory Report at 435, ¶ 34).  Instead, once a court in a contracting state finds that a child has been wrongfully removed to, or wrongfully retained in, its jurisdiction, the court must order the child's prompt return to his or her country of habitual residence without altering the custodial regime that courts in the child's home country have put in place.  Hague Convention art. 12; Shealy, 295 F.3d at 1121 ("Our scope of inquiry under the Hague Convention is limited to the merits of the abduction

_____

[2] The Hague Conference that drafted the Hague Convention recognized the Explanatory Report "as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it." Hague International Child Abduction Convention, 51 Fed. Reg. 10494, 10503 (March 26, 1986).

claim. As such, the merits of the underlying dispute related to custody . . . are not before us.") (citation and internal quotation marks omitted).

Neither party disputes that England is Jivan's country of habitual residence. See generally Aplt. Opening Br. at 7; Aple. Response Br. at 12-18. As a result, the English family court had, and continues to have, plenary jurisdiction over Jivan's custody. See Dubois, 189 F.3d at 246 (warning lower courts not to "exceed [their] Hague Convention function by making determinations, such as who is the better parent, that remain within the purview of the court with plenary jurisdiction over the question of custody"). The English family court retained its jurisdiction over custody regardless of whether the district court correctly decided the merits of the Hague Convention petition. See In re Application of Adan, 437 F.3d 381, 391 (3d Cir. 2006) ("[A] determination by the host country that a party had custody rights in the country of origin for purposes of determining whether removal was wrongful under the Convention has no bearing on the merits of a subsequent custody determination in the country of origin once the child is returned.") (citations omitted). Exercising its plenary jurisdiction, the English family court has now determined that Shahani's custody rights do not extend to removing Jivan from England and returning him to the United States. As this court has no jurisdiction to determine the parties' custody rights over Jivan, we must yield to the English family court's decision forbidding Shahani from removing Jivan to the United States. As a result, we can grant no effectual relief to Shahani.

-14-

Indeed, granting Shahani the relief she seeks would create the evil that the Hague Convention was intended to prevent: dueling custody orders issued by separate national courts. Ohlander v. Larson, 114 F.3d 1531, 1541 (10th Cir. 1997) (describing the problem that the Hague Convention sought to address as the existence of "two conflicting custody decisions without guidance as to which country's custody decision had preference"). Time and again, we and our sister circuits have sought to avoid issuing an order under the Hague Convention that would present such a conflict. For instance, in Ohlander the parents of a little girl filed separate Hague Convention actions in the United States and in Sweden that resulted in contradictory orders: the American court concluded that the United States was the girl's habitual residence, while the Swedish court held that Sweden was her habitual residence. 114 F.3d at 1535-36. We concluded that the existence of the conflicting Swedish Hague Convention order counseled in favor of dismissing the American proceeding because we would otherwise "allow to stand two conflicting decisions regarding [the child's] state of habitual residence," an "absurd" result given the Hague Convention's purpose of avoiding conflicting custody decisions. Id. at 1541.

In Miller, an Ontario court granted custody in favor of the mother of two children, while a New York state court later granted custody in favor of the father of those children. 240 F.3d at 396. The mother filed a Hague Convention petition in federal district court seeking return of her children based on the Ontario custody order. Id. at

397. Recognizing that the Hague Convention "'was meant, in part, to lend priority to the custody determination hailing from the child's state of habitual residence,'" and concluding that Canada was the child's state of habitual residence, the Fourth Circuit determined that the Ontario custody order, not the New York custody order, controlled. Id. at 399, 401 & n.13 (quoting Ohlander, 114 F.3d at 1541 (10th Cir. 1997)).

Finally, the Sixth Circuit in Friedrich articulated its test for when a custodial parent exercises custody rights under the Hague Convention: a custodial parent exercises custody rights unless the parent's actions "constitute clear and unequivocal abandonment of the child." 78 F.3d at 1066. One reason that the Sixth Circuit gave for adopting such a test was that arguments concerning whether a parent exercised custody rights too easily entered the "forbidden territory" of the merits of custody. Id. at 1065. A "broad definition" was therefore needed to prevent courts from reaching a result on the question of "exercise" that varied with what a court in the child's country of habitual residence might find regarding custody. Id. at 1065-66.

Although we recognize that these cases present facts different than those we encounter in our case, the harm that those cases addressed is the same that we face in this appeal – the threat of conflicting custody orders issued by separate national courts. If, after we reversed the district court's order granting Navani's petition, the district court ordered Jivan's return to Shahani's custody, the district court's order would stand in direct opposition to the English family court's custody order forbidding direct contact

-16-

between Shahani and her son. The spirit, therefore, as well as the letter of the Hague Convention prevents us from granting any effectual relief to Shahani, thereby rendering her appeal moot.

B.

To reassure us that her case is not moot, Shahani makes four separate arguments. First, she contends that the issue in her appeal remains whether Shahani breached Navani's rights of custody under the original custody order – an issue that she asserts remains regardless of the English family court's subsequent custody proceedings. Aplt. Mot. to Dismiss Response Br. at 4; Aplt. Supp. Response Br. at 5. While in a narrow sense Shahani is correct that the *issue* she asks us to address is still before us, the fact remains that we cannot grant her any effectual *relief*, even if we decided the issue in her favor, for the reasons we stated above.

Second, Shahani asserts that the new custody order violates principles of English family law in determining that Navani had equal rights of custody at the time of the allegedly wrongful retention. Aplt. Mot. to Dismiss Response Br. at 2-3. According to Shahani, the new custody order therefore "fails" as controlling subsequent authority. Id. at 2. Even if we agreed with Shahani's characterization of the new custody order as being contrary to settled principles of English law, the only way for us to remedy the error would be to hold that the English family court incorrectly interpreted its own law in deciding custody. The Hague Convention explicitly forbids us, however, from

-17-

determining the merits of custody. Hague Convention arts. 16, 19. As the forum with plenary jurisdiction over custody, the English family court system is the only appropriate venue for challenging the new custody order.

Third, Shahani suggests that the new custody order should have no effect in American courts because it was issued ex parte without her participation. Aplt. Mot. to Dismiss Response Br. at 3-4. It is true that principles of comity generally require us to examine the fairness of the foreign country's judicial procedures. See Restatement (Third) of the Foreign Relations Law of the United States § 482 cmt. b (1987) ("A court asked to recognize or enforce the judgment of a foreign court must satisfy itself of the essential fairness of the judicial system under which the judgment was rendered."). In analyzing the fairness of a foreign judicial system, we inquire if

> "there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment."

Phillips USA v. Allflex USA, 77 F.3d 354, 359 (10th Cir. 1996) (quoting Hilton, 159 U.S. at 202). Although Shahani wishes to leave us with the impression that the English family court is a renegade body that routinely issues orders without hearing from both sides, Shahani's affidavit makes clear that Shahani's failure to participate in the English family court proceedings was her choice, not the result of the inherent unfairness of the

English judicial system. As she relates in her affidavit, Shahani made a strategic decision not to participate in the English family court proceedings that produced the new custody order because she feared arrest for her alleged abduction of Jivan in 2004 if she returned to England. Aff. of Bina Shahani at 2-3. Instead, she decided that she would have a better chance of winning a more favorable ruling if she and her counsel declined to take part in the English family court's proceedings. Id.

Fourth and finally, Shahani asserts that this appeal is analogous to Whiting v. Krassner, 391 F.3d 540 (3d Cir. 2004) cert. denied, 545 U.S. 1131 (2005), and Fawcett v. McRoberts, 326 F.3d 491 (4th Cir. 2003), in which the Third and Fourth Circuits concluded that an appeal of an order granting a Hague Convention petition is not mooted by the child's return to his country of habitual residence during the pendency of the appeal. In Fawcett, whose logic the Third Circuit substantially adopted, the Fourth Circuit explained that it retained the power to grant meaningful relief because the district court could order the child's return to the United States following a reversal and remand. 326 F.3d at 496. Furthermore, it noted (because the case involved Scottish law) that the courts of the United Kingdom are required by statute to recognize another contracting state's Hague Convention orders – meaning that if a federal court of appeals reversed a district court's granting of a return petition, the courts of the United Kingdom would recognize that reversal and provide for the child's return to the United States. Id. at 496-97. Finally, even if the United Kingdom was not so felicitous of a foreign court's orders,

-19-

an American court could still find a non-complying petitioner in contempt.  Id. at 497.

Even if Fawcett and Whiting are correct that a child's return to his country of habitual residence fails to moot an appeal – an issue we need not reach in this case[3] – Shahani's appeal differs from Fawcett and Whiting in one critical aspect: Shahani's appeal became moot as a result of the terms of the new custody order, *not* the mere fact of Jivan's return to England.  Assuming that we had the power to alter the status quo, prior to the issuance of the new custody order, by ordering Jivan's return to the United States, we lost that authority once the English family court altered the terms of the child's custody to forbid Jivan from traveling to the United States to have contact with his mother.  As the English family court retained jurisdiction at all times over Jivan's custody, and we have never had jurisdiction over the merits of the English family court's custodial decisions, we are powerless to alter the current custodial regime forbidding the very relief that Shahani seeks: return of the child to the United States.

Shahani contends that Fawcett and Whiting are analogous, however, in two other respects.  First, Shahani maintained at oral argument that an order reversing the district court's granting of Navani's Hague Convention petition would affect how the English family court, in the future, apportions custody among the parties.  Beyond a citation to an

---

[3] It should be noted that the Eleventh Circuit, in disagreement with the Third and Fourth Circuits, has concluded that a Hague Convention case becomes moot upon the child's return to his country of habitual residence because federal courts become "powerless" to grant relief to the respondent afterward.  Bekier v. Bekier, 248 F.3d 1051, 1054-55 (11th Cir. 2001).

email from Shahani's English lawyer stating that if Shahani "wins [in America] it would help [in England]," Shahani provides no legal authority for such an assertion. The new custody order gives every indication that it resulted from the English family court's own evaluation of the merits of custody, rather than being dependent on the outcome of the Hague Convention proceeding in New Mexico. Shahani makes no specific argument to the contrary.

Second, Shahani suggests that the district court's orders on attorney fees and costs prevent her appeal from becoming moot, but these rulings are insufficient to extend the life of this appeal. See Citizens for Responsible Gov't State PAC v. Davidson, 236 F.3d 1174, 1183 (10th Cir. 2000) ("[T]he general rule is that an interest in attorney's fees is insufficient to create an Article III case or controversy where a case or controversy does not exist on the merits of the underlying claim.") (quoting In re Western Pac. Airlines, Inc., 181 F.3d 1191, 1196 (10th Cir. 1999)). While we agree that Shahani's appeal could become moot while the parties' controversy over fees and costs could still remain, Dahlem v. Bd. of Educ. of Denver Pub. Schs., 901 F.2d 1508, 1511 (10th Cir. 1990), Shahani's notice of appeal designated the district court's March 31, 2006, order granting Navani's petition for an order of return and the district court's May 30, 2006, order denying Shahani's motion for a new trial or to alter or amend the judgment, but failed to designate the district court's fees and costs orders. Aplt. App. at 509. As a result, unlike the appellants in Fawcett and Whiting who did appeal the district court's fees and costs

-21-

orders, we have jurisdiction to review only the two orders that Shahani designated. FED. R. APP. P. 3(c)(1)(B) ("The notice of appeal must: . . . designate the judgment, order, or part thereof being appealed . . . ."); Averitt v. Southland Motor Inn, 720 F.2d 1178, 1180 (10th Cir. 1983) ("[A]n appellate court has jurisdiction to review only the judgment or part of the judgment designated in the notice of appeal.") (citation omitted). Further, it is clear that Shahani intended to appeal only the two listed orders, as the parties' briefing focused exclusively on these two orders. See generally Aplt. Opening Br.; Aple. Response Br.; Aplt. Reply Br. As such, she cannot now seek review of rulings from which she failed to appeal. Cunico v. Pueblo School Dist. No. 60, 917 F.2d 431, 444 (10th Cir. 1990) ("Plaintiff clearly intended to appeal only a portion of the trial court's order respecting damages and fees, and our jurisdiction does not extend to other matters of the judgment that plaintiff may now wish to appeal.") (citation omitted).

## III.

Navani's motion to dismiss this appeal as moot is GRANTED and this appeal is DISMISSED. Shahani's motion for reargument is DENIED. Navani's request for attorney fees is DENIED.