272 P.3d 1148 (2012)
In re the Parental Responsibilities Concerning T.L.B. and M.A.B., Children, and Concerning Leah Marie Esquibel, Appellant, and
Nicola Laurence Boswell, Appellee.
No. 10CA2157.
Colorado Court of Appeals, Div. I.
January 19, 2012.
*1151 Sarah E. Lipka, Alamosa, Colorado, for Appellant.
Karin Johnson Chatfield, LLC, Karin Johnson Chatfield, Denver, Colorado, for Appellee.
Opinion by Judge TAUBMAN.
¶ 1 This case involves an international jurisdictional custody dispute involving Colorado and Canadian courts. It concerns Leah Marie Esquibel (mother), who at all relevant times lived in Colorado, Nicola Laurence Boswell (father), who at all relevant times lived in Vancouver, Canada, and their two young children.
¶ 2 Mother appeals the trial court's order that Canada, rather than Colorado, has jurisdiction to determine parental responsibilities for the children. However, we must first address whether the trial court's order has become moot as a result of an October 2011 Canadian custody order. As discussed below, we conclude the case is not moot.
¶ 3 We then address two related sets of laws(1) the Hague Convention on Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 (1980) (Hague Convention), and its implementing statutes, 42 U.S.C. §§ 11601 to 11611 (2006), and (2) the Uniform Child Custody Jurisdiction and Enforcement Act, sections 14-13-101 to -403, C.R.S.2011 (UCCJEA)which are intended to prevent jurisdictional conflicts in child custody cases. We conclude that the trial court correctly determined that Canada has jurisdiction and therefore affirm its order.
¶ 4 Initially, we note that we may not consider information outside of the trial court record. See In re Marriage of McSoud, 131 P.3d 1208, 1223 (Colo.App.2006) ("Only facts appearing in the record can be reviewed...."). Accordingly, while we have *1152 considered the Canadian orders that are a part of the record, we have not considered the information in the addendum to father's answer brief or any facts referenced in either party's briefs that are not included in the record.

I. Background
¶ 5 Beginning in 2001, the parties lived together in Canada for six years and had two children. After mother took the children, without informing father, and came to Colorado in 2007, father obtained a Canadian order granting him custody of the children.
¶ 6 Father then located mother and the children in Colorado, and filed a Hague Convention petition in Adams County District Court requesting that the children be returned to Canada. Concurrently, mother moved in Denver District Court for an allocation of parental responsibilities for the children. Proceedings on mother's motion were stayed, at father's request, until his Hague Convention petition could be heard and resolved in Adams County.
¶ 7 After a hearing on the petition, the Adams County District Court found that although father had made a prima facie case to return the children to him in Canada, returning the children would risk subjecting them to sexual abuse. Thus, return was denied under the exception in article 13(b) of the Hague Convention for situations where returning a child creates a grave risk of exposing the child to physical or psychological harm or otherwise places the child in an intolerable situation.
¶ 8 The Adams County and Denver actions were then consolidated in Denver, and father moved to dismiss, contending that under the UCCJEA, parental responsibilities should be determined in Canada where the children had lived their entire lives and where the first custody proceeding was brought. After an evidentiary hearing, the court agreed with father that Canada had jurisdiction under the UCCJEA, but further ordered that the children would remain with mother in Colorado, pursuant to the temporary emergency jurisdiction procedures in section 14-13-204, C.R.S.2011, until the Canadian court could enter an order, or for a maximum of one year. Mother appealed from this order.
¶ 9 While her appeal was pending, however, the Canadian court conducted a multi-day hearing in September 2011, in which mother and father both participated. The Canadian court heard testimony from the parents, and from expert witnesses, on the issues of custody and guardianship. In October 2011, in a detailed forty-five-page order, the Canadian court rejected mother's allegations that father had abused the children and awarded father sole custody and guardianship of them following a brief period of reintegration therapy. We requested supplemental briefing from the parties concerning whether the October 2011 Canadian order moots mother's appeal, and we begin by addressing that issue.

II. Mootness
¶ 10 Mother contends that the Canadian order does not moot her appeal. We agree.
¶ 11 If a judgment, when rendered on an issue, would not have any effect on an existing controversy, the issue is moot. See In re Marriage of Balanson, 25 P.3d 28, 38 (Colo.2001). When an issue becomes moot because of events occurring while an appeal is pending, the appellate court should decline to render an opinion on the issue. See id.
¶ 12 Here, mother argues that Colorado, rather than Canada, has subject matter jurisdiction to determine parental responsibilities for the children. If she is correct, then the intervening Canadian order would not be determinative of that issue, and thus would not moot the appeal. See Currier v. Sutherland, 218 P.3d 709, 714 (Colo.2009) ("Because a lack of subject matter jurisdiction means that a court has no power to hear a case or enter a judgment, it is an issue that may be raised at any time, even after a verdict has been entered.").
¶ 13 We view Navani v. Shahani, 496 F.3d 1121 (10th Cir.2007), relied on by father, as materially distinguishable from the present case. In Navani, while an appeal of a Hague Convention order returning a child to England was pending, the English court entered a final custody order as to the child. Id. at *1153 1124. The Tenth Circuit Court of Appeals held that the mother's issue on appeal whether the father possessed a custodial right to the child as is required under the Hague Convention for the child to be returned to himwas mooted by the intervening order establishing the father's custodial rights, including when the children were removed from him in England. Id. at 1127-28.
¶ 14 Here, in contrast, mother does not appeal from the Hague Convention return order. Rather, she appeals from the trial court's ruling under the UCCJEA that Canada, and not Colorado, has subject matter jurisdiction to determine parental responsibilities for the children. The fact that Canada has already entered a custody order does not moot the issue of which court had subject matter jurisdiction to enter an order in the first place. See Currier, 218 P.3d at 714 (subject matter jurisdiction can be challenged even after a verdict has entered). Thus, although we acknowledge the practical difficulties of review after the Canadian order has entered, because the appeal concerns subject matter jurisdiction, we do not view the issue raised as moot. Cf. In re Marriage of Jeffers, 992 P.2d 686, 690-91 (Colo.App. 1999) (remanding for a Hague Convention hearing concerning whether the parties' children should be returned to Greece, despite the fact that a Greek court had already entered a custody order).
¶ 15 We reject mother's argument, however, that Fawcett v. McRoberts, 326 F.3d 491 (4th Cir.2003), abrogated on other grounds by Abbott v. Abbott, ___ U.S. ___, 130 S.Ct. 1983, 176 L.Ed.2d 789 (2010), and Whiting v. Krassner, 391 F.3d 540 (3d Cir.2004), are analogous to the present case. As the Tenth Circuit Court recognized in Navani, Fawcett and Whiting involved children who were physically returned to a foreign country during the pendency of an appeal, but for whom no custody orders had yet been entered in the foreign court. See Navani, 496 F.3d at 1132. Thus, these cases are not relevant here, where the children were not only not returned to Canada during the appeal, but the Canadian court also entered a custody order for them. See id.
¶ 16 Because we conclude that the appeal is not moot, we need not address mother's contention that the exceptions to mootness should apply, or father's argument to the contrary.

III. Jurisdiction to Determine Parental Responsibilities
¶ 17 Mother contends that the trial court erred by finding under the UCCJEA that Canada has jurisdiction to determine parental responsibilities for the parties' children. We disagree.
¶ 18 We review de novo the trial court's interpretation of the Hague Convention and its implementing statute, see Jeffers, 992 P.2d at 689, as well as its decision that Canada, not Colorado, has subject matter jurisdiction under the UCCJEA. See People in Interest of D.P., 181 P.3d 403, 406 (Colo. App.2008).

A. UCCJEA
¶ 19 The UCCJEA addresses whether a Colorado court or a court in another state has jurisdiction in parental responsibilities proceedings. Id. For UCCJEA purposes, a court in another country is treated as though it were a court in another state. See § 14-13-104(1), C.R.S.2011; see also Bellew v. Larese, 288 Ga. 495, 706 S.E.2d 78, 80 (2011); Carter v. Carter, 276 Neb. 840, 758 N.W.2d 1, 7 (2008); cf. Jeffers, 992 P.2d at 691 (decided under the Uniform Child Custody Jurisdiction Act (UCCJA), which preceded the UCCJEA).
¶ 20 Under section 14-13-206(1), C.R.S. 2011, a Colorado court may not exercise jurisdiction, except on a temporary emergency basis, if proceedings have been commenced in a court of another state having jurisdiction substantially in conformity with the UCCJEA, unless those proceedings have been terminated or stayed because Colorado is a more convenient forum. See People in Interest of M.C., 94 P.3d 1220, 1223 (Colo.App. 2004).
¶ 21 A court where a child is located may exercise temporary emergency jurisdiction under section 14-13-204(1), C.R.S.2011, to protect the child from threatened mistreatment *1154 or abuse. An order under this section is temporary only, however, and lapses as soon as the state which otherwise has jurisdiction under the UCCJEA enters an order. § 14-13-204(3) cmt., C.R.S. 2011; see also M.C., 94 P.3d at 1225 (assumption of emergency jurisdiction is limited and does not confer authority to make a permanent custody disposition when proceedings are pending in another state).
¶ 22 Here, as mother acknowledged in her petition for parental responsibilities, an action involving the children was initiated by father in Canada before she filed the petition. Recognizing the pending Canadian custody action, the trial court communicated on the record with the Canadian court. It then found that because Canada's jurisdiction was substantially in conformity with the UCCJEA and Canada had not determined that Colorado was a more convenient forum, Canada had jurisdiction to determine parental responsibilities. See § 14-13-206(2), C.R.S. 2011 (requiring a court to communicate with the court in the state where proceedings were first brought). Therefore, the trial court further determined that Colorado could exercise only temporary emergency jurisdiction under section 14-13-204.
¶ 23 Mother argues, however, that Colorado's subject matter jurisdiction to determine parental responsibilities for the children was established in father's Hague Convention proceeding in Adams County, and that because the children's return to Canada was denied in that proceeding, the trial court erred by applying the UCCJEA and finding that Canada, rather than Colorado, had jurisdiction. We are not persuaded.

B. Hague Convention
¶ 24 The purpose of the Hague Convention is to return promptly children who are wrongfully removed from their place of habitual residence, unless one of the narrow exceptions to return applies. See 42 U.S.C. § 11601(a)(4) (2006); Jeffers, 992 P.2d at 690. "The Convention is based on the principle that the best interests of the child are well served when decisions regarding custody rights are made in the country of habitual residence." Abbott, ___ U.S. at ___, 130 S.Ct. at 1995. Thus, the Hague Convention should not be interpreted to permit a parent to select the country that will adjudicate parental responsibilities solely by bringing the child to that country. See id. at ___, 130 S.Ct. at 1996; see also March v. Levine, 249 F.3d 462, 472 (6th Cir.2001) ("The Hague Convention ... [is] specifically designed to discourage those who would remove or retain children in the hopes of seeking a `home court advantage' ....").
¶ 25 Return is not required under the Hague Convention, however, when there is a grave risk that return would expose a child to physical or psychological harm or otherwise place the child in an intolerable situation. Hague Convention art. 13(b); Abbott, ___ U.S. at ___, 130 S.Ct. at 1997.
¶ 26 Here, after the children's return to Canada was denied under the grave risk of harm exception, the trial court applied the UCCJEA and determined that although the children would remain in Colorado temporarily, Canada had jurisdiction to enter final parental responsibilities orders for them. Thus, the issue presented here is whether Canada, which was undisputedly the children's place of habitual residence before mother brought them to Colorado and was also the place where the first custody proceeding was initiated, or Colorado, which is the state to which mother brought the children and the state that exercised temporary emergency jurisdiction over them, has jurisdiction to enter final parental responsibilities orders. We conclude that the trial court properly determined that Canada has jurisdiction in this situation.
¶ 27 We reject mother's argument, relying on the Supremacy Clause, U.S. Const. art. VI, cl. 2, that the Hague Convention proceedings preempted the trial court's UCCJEA analysis. Proceedings under the UCCJEA do not conflict with, and are not preempted by, proceedings under the Hague Convention because the two laws address different objectives. See Suarez v. Castrillo, (D.Colo. No. 11-cv-01762-MSK, July 13, 2011) (2011 WL 2729074) (unpublished opinion and order denying reconsideration). The Hague Convention focuses on returning children *1155 who have been wrongfully removed from their place of habitual residence, whereas the UCCJEA sets forth standards to determine which jurisdiction decides custody disputes. See id. at *3; see also 42 U.S.C. § 11603(h) (2006) ("The remedies established by the Convention ... shall be in addition to remedies available under other laws...."); Hague Convention art. 34 (the convention does not restrict application of other laws); cf. In re Guardianship of Ariana K., 120 Cal.App.4th 690, 15 Cal.Rptr.3d 817, 828-29 (2004) (Hague Convention remedies do not deprive court of subject matter jurisdiction to consider a guardianship petition for a child).
¶ 28 Accordingly, although mother is correct that the Hague Convention usually directs that the child be physically taken to the country that will determine parental responsibilities, see Suarez, 2011 WL 2729074 at *3, we reject her contention that a decision not to return a child under the grave risk exception means that the country to which the child was taken must always make the final parental responsibilities decision concerning the child.
¶ 29 Under the Hague Convention, a country to which a child has been removed has jurisdiction to decide the merits of the return claim but not necessarily the merits of the underlying custody dispute. See Hague Convention art. 19; 42 U.S.C. § 11601(b)(4) (2006); Carrascosa v. McGuire, 520 F.3d 249, 260 (3d Cir.2008); Friedrich v. Friedrich, 78 F.3d 1060, 1063 (6th Cir.1996). Thus, parental responsibilities decisions can be made in the child's place of habitual residence even when the child is not immediately returned there because of an exception to the Hague Convention return requirement. See Simcox v. Simcox, 511 F.3d 594, 607 (6th Cir.2007) (finding grave risk of harm is not an invitation for an abducted-to country to also decide the child's best interests); Friedrich, 78 F.3d at 1068 (grave risk exception is not a license for abducted-to country to decide best interests because that decision is a custody matter reserved to the child's country of habitual residence); Kufner v. Kufner, 480 F.Supp.2d 491, 508-09 (D.R.I.2007) (the Hague Convention is designed to ensure that best interests issue is presumptively litigated in the child's country of habitual residence), aff'd, 519 F.3d 33 (1st Cir.2008).
¶ 30 We further reject mother's argument that article sixteen of the Hague Convention, which provides, in relevant part, that a state to which a child has been taken shall not decide the merits of a custody claim "until it has been determined that the child is not to be returned," compels a different result. We do not interpret this provision as requiring that a state to which a child has been taken decide final parental responsibilities in all cases when the child is not returned. Rather, we conclude that the trial court did not err, under the circumstances involved here, by exercising only temporary emergency jurisdiction under the UCCJEA, and allowing Canada, where the children had lived all their lives and where the evidence as to their best interests and mother's abuse allegations was located, to exercise jurisdiction over parental responsibilities.
¶ 31 Indeed, the trial court's order concerning the UCCJEA fulfilled the dual objectives of the Hague Convention and the UCCJEA. The Adams County District Court's order determined that Canada was the country of habitual residence of the children, but concluded that they should not be returned to Canada under the Hague Convention's "grave risk of harm" exception. Applying the UCCJEA, the Denver District Court then concluded that Colorado only had temporary emergency jurisdiction, based on allegations of father's abuse of the children. By concluding that the Denver District Court's jurisdiction was only temporary, the Denver court provided an opportunity for the Canadian court to decide the issue of custody, including whether father had abused the children.
¶ 32 As noted above, following a lengthy hearing, the Canadian court rejected the allegations of father's abuse and ordered a brief period of reintegration therapy before the children would be reunited with father.
¶ 33 As a result, the Hague Convention's objective of adjudicating custody in the country of the children's habitual residence was met, as was its corollary objective of protecting *1156 the children from grave risk of harm. Additionally, the Denver trial court satisfied the UCCJEA's objectives of ensuring that the children were protected from threatened mistreatment or abuse, while at the same time providing that custody, or allocation of parental responsibilities, would be determined by Canada as the children's home state under section 14-13-102(7)(a), C.R.S. 2011.
¶ 34 We are not persuaded otherwise by Cerit v. Cerit, 188 F.Supp.2d 1239 (D.Haw. 2002), on which mother relies. At issue there was whether a federal court should abstain in a Hague Convention case when a petition was also filed in state court. The case did not involve jurisdiction under the UCCJEA, and we do not view the court's statement, that a Hague Convention proceeding determines which country should address custody issues, as determinative of the issues raised in the present case where the trial court applied the UCCJEA.
¶ 35 As mother acknowledges, Susan L. v. Steven L., 273 Neb. 24, 729 N.W.2d 35 (2007), is distinguishable from the present situation. Accordingly, we do not address her arguments concerning that case or the resulting Nebraska legislation, which has no corollary in Colorado.
¶ 36 We note that our disposition here is consistent with Jeffers, in which a division of this court remanded for a hearing on whether the children should be returned to Greece under the Hague Convention, but affirmed the trial court's decision under the UCCJA that Greece had jurisdiction to enter a final custody order for them. See Jeffers, 992 P.2d at 689-92. The division in Jeffers recognized, as we do here, that the Hague Convention return procedures are separate from the determination of jurisdiction to enter final parental responsibilities orders. See id. at 690.
¶ 37 We further note that our disposition is also consistent with the 1996 Hague Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Co-operation in Respect of Parental Responsibility and Measures for the Protection of Children, 35 I.L.M. 1391 (1996), which was signed by the United States in October 2010, but which has not yet been codified into law. See Linda D. Elrod & Robert G. Spector, A Review of the Year in Family Law: Working Toward More Uniformity in Laws Relating to Families, 44 Fam. L.Q. 469, 470 (2011). The 1996 convention provides, consistent with the UCCJEA and with our disposition here, that a child's place of habitual residence retains jurisdiction, that the place to which the child has been removed may take only such urgent measures as necessary to protect the child, and that such protective measures lapse as soon as the place of habitual residence takes action concerning the child. See 1996 Hague Convention arts. 7, 11(2).

C. Claim and Issue Preclusion
¶ 38 Mother further contends that claim and issue preclusion bar father's claim that Canada has jurisdiction to determine parental responsibilities. Again, we disagree.
¶ 39 Claim preclusion (formerly res judicata) operates to bar a second action on a claim that was, or could have been, litigated in a prior proceeding. City & Cnty. of Denver v. Block 173 Assocs., 814 P.2d 824, 830 (Colo.1991). Issue preclusion (formerly collateral estoppel) bars relitigation of any issue that was actually litigated in a prior proceeding. Id. at 831.
¶ 40 Claim and issue preclusion do not apply, however, when the claim or issue sought to be precluded is not identical to the claim or issue litigated in the prior proceeding. See id. at 830-31. Accordingly, neither doctrine applies here because, contrary to mother's contention, subject matter jurisdiction to determine final parental responsibilities was not decided in father's Hague Convention action. Rather, as noted above, the Hague Convention action concerned only return of the children, and the trial court determined jurisdiction to enter parental responsibilities orders under the UCCJEA. Thus, there is no identity of claims or issues.
¶ 41 Additionally, like the trial court, we do not view the suggestion by the Adams County District Court that father may assert his rights in Denver as ruling that subject *1157 matter jurisdiction to determine parental responsibilities would be in Denver as opposed to Canada. Rather, the Adams County District Court expressly determined only the limited issue before it under the Hague Convention, which was whether the children must be returned to Canada. The court recognized its limited power by stating that the Hague Convention "does not specify or authorize any further proceedings once the determination to return or not return the children has been made," and "the finding of risk of harm to the children if returned to Canada ends the Hague Convention inquiry." We interpret the court's further comment concerning proceedings in Denver as relating to the impending venue change, not as a determination of which court would have jurisdiction to enter final parental responsibilities orders for the children.

D. Exceptions to International Application of the UCCJEA
¶ 42 Mother further contends that the trial court erred in ruling that Canada has jurisdiction because the Canadian action was not in substantial conformity with the UCCJEA and because Canada violates fundamental principles of human rights. See § 14-13-104(2), (3), C.R.S.2011. We disagree.
¶ 43 We reject mother's argument that she had inadequate notice of the Canadian custody proceedings. As evidenced by her having listed the Canadian action in her Colorado petition for parental responsibilities as a previously filed action concerning the children, she clearly had actual notice of the proceedings. The record further reflects that mother was represented by a Canadian attorney who not only filed motions on her behalf before she returned to Canada, but also represented her in the custody proceedings that were conducted while this appeal was pending.
¶ 44 Thus, the fact that father was unable to serve mother initially, because she left Canada without disclosing her location, does not, in our view, mean that mother was denied a reasonable opportunity to be heard such that the Canadian action was not in substantial conformity with the UCCJEA. See, e.g., Nash v. Salter, 280 Mich.App. 104, 760 N.W.2d 612, 617-19 (2008) (due process allegations, which supported contention that proceedings did not conform to the UCCJEA, were waived when the parent participated in the proceedings); C.L. v. Z.M.F.H., 18 A.3d 1175, 1179-80 (Pa.Super.Ct.2011) (custody determination was valid under the UCCJEA when parent had notice of the proceedings).
¶ 45 Like the trial court, we also reject mother's contention that jurisdiction is appropriate in Colorado because Canada's child custody laws violate fundamental principles of human rights. This exception applies only in the most egregious cases. § 14-13-104 cmt., C.R.S. 2011. Nothing in the record here supports the conclusion that the exception applies to Canada. The record of the communication between the Colorado and Canadian courts indicates that the Canadian court was willing to hear and consider mother's allegations. As noted, the October 2011 order by that court indicates that the court conducted a lengthy hearing, heard testimony from mother, father, and multiple expert witnesses, and then rejected mother's allegations of father's abuse and ordered a period of reintegration therapy before the children were reunited with father.
¶ 46 Because mother fully participated, with counsel, in the custody proceedings in Canada, we reject her claim that her due process rights were violated because she did not have adequate notice or sufficient opportunity to participate in those proceedings.

IV. Mother's Spousal Abuse Allegations
¶ 47 Last, mother contends that the trial court erred by not making findings concerning her spousal abuse allegations. We disagree.
¶ 48 Contrary to mother's argument, the trial court here did not allocate temporary parental responsibilities under section 14-10-108(1.5), C.R.S.2011. Rather, the court exercised only the very limited jurisdiction permitted under section 14-13-204 to protect the children by keeping them in Colorado temporarily until the Canadian court entered further orders. Accordingly, the trial *1158 court was not required to apply the factors in section 14-10-124(1.5), C.R.S.2011, and the court did not err by focusing solely on the children, and not addressing mother's spousal abuse allegations. Cf. Charalambous v. Charalambous, 627 F.3d 462, 468 (1st Cir. 2010) ("The relevant inquiry is not whether there would be a grave risk of harm to [the mother] if she returned to Cyprus; rather, the grave risk inquiry goes to the children.").

V. Conclusion
¶ 49 The trial court did not err by determining, after the children were retained in Colorado under the Hague Convention grave risk of harm exception and section 14-13-204(1), that Canada was the proper forum under the UCCJEA to enter final parental responsibilities orders for them.
¶ 50 The order is affirmed.
Judge ROMÁN and Judge BOORAS concur.