Opinion by JUDGE J. JONES
¶ 1 In this proceeding to determine parental responsibilities for the child of A.L.C. (mother) and C.R.B. (father), father appeals from the district court's judgment declining jurisdiction under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), §§ 14-13-101 to - 403, C.R.S. 2014. We affirm.
I. Background
¶ 2 The parties were never married but are the parents of a child, B.C.B., born in Idaho on December 5, 2012. The parties and B.C.B. moved to Colorado on July 17, 2013. On August 31, 2013, mother and B.C.B. went to Massachusetts, where mother's extended family lived. Mother testified at the hearing to determine UCCJEA jurisdiction that she had purchased a round trip plane ticket and intended to return to Colorado if she and father could work out their relationship, but while she was in Massachusetts ultimately decided that the relationship was not going to work out and that she and B.C.B. would not return to Colorado. Father testified that mother had always intended to return to Colorado after a one-month visit with her family in Massachusetts.
¶ 3 On September 26, 2013, after father learned that mother and B.C.B. would not be returning to Colorado, he petitioned the Colorado district court for an allocation of parental *929 responsibilities for B.C.B. He served mother with the petition two days later when she returned to Colorado to get her and B.C.B.'s belongings. Mother responded, contesting the Colorado court's jurisdiction. After she returned to Massachusetts, she filed a custody action there. The Massachusetts court entered temporary orders on October 11, 2013, granting custody of B.C.B. to mother.
¶ 4 The Colorado and Massachusetts courts later conferred, and the Colorado district court asserted temporary emergency jurisdiction over B.C.B., ordered mother to return to Colorado with B.C.B., and set a hearing to determine jurisdiction under the UCCJEA. The Massachusetts court vacated its temporary order granting custody to mother and stayed its proceedings pending the Colorado hearing and a decision on jurisdiction.
¶ 5 After the hearing, the Colorado district court determined that although Idaho was B.C.B.'s home state under the UCCJEA, neither party wanted Idaho to take jurisdiction and therefore either Colorado or Massachusetts could exercise jurisdiction under section 14-13-201(1)(d), C.R.S. 2014. The court further determined that although either state could take jurisdiction, neither was required to do so, and it declined its jurisdiction on the basis that Colorado was not the most appropriate forum.
¶ 6 The court alternatively applied section 14-13-201(1)(b) and determined that B.C.B. had more significant connections with Massachusetts than with Colorado, and that more substantial evidence concerning his care, protection, training, and personal relationships was available in Massachusetts than in Colorado. It therefore also declined jurisdiction under section 14-13-201(1)(b).
II. Analysis
¶ 7 We reject father's contention that the district court erred by declining to exercise jurisdiction to allocate parental responsibilities for B.C.B.
A. Standard of Review
¶ 8 Although we review de novo the district court's legal determination whether it had jurisdiction under the UCCJEA to enter an initial parental responsibilities order for B.C.B., see Madrone v. Madrone, 2012 CO 70, ¶ 9, 290 P.3d 478, we review the court's decision declining to exercise jurisdiction for an abuse of discretion. See McCarron v. Dist. Court, 671 P.2d 953, 956 (Colo. 1983) (applying previous version of the statute); In re Marriage of Jeffers, 992 P.2d 686, 691 (Colo. App. 1999) (same).
B. UCCJEA Jurisdiction
¶ 9 The UCCJEA governs whether a Colorado court or a court in another state has jurisdiction to allocate parental responsibilities for a child. In re Parental Responsibilities Concerning T.L.B., 2012 COA 8, ¶ 19, 272 P.3d 1148 ; see Madrone, ¶ 10.
¶ 10 Section 14-13-201(1) provides the exclusive basis for a Colorado court's jurisdiction to make an initial child custody determination, as father sought in this case. See § 14-13-201(2) ; Madrone, ¶ 10. Under section 14-13-201(1), a Colorado court has jurisdiction to make an initial child custody determination only under the following circumstances:
• Colorado is the child's home state on the date the proceedings were commenced, or was the child's home state within 182 days before the proceedings were commenced and the child is absent from Colorado but a parent continues to live here. § 14-13-201(1)(a) ;
• The child has no home state, or the child's home state has declined to exercise jurisdiction on the ground that Colorado is a more appropriate forum, and the child and at least one parent have a significant connection with Colorado, and substantial evidence is available in Colorado concerning the child's care, protection, training, and personal relationships. § 14-13-201(1)(b) ;
• All courts having jurisdiction under either subsection 1413-201(1)(a) or (b), or substantially similar provisions, have declined to exercise jurisdiction on the *930 ground that Colorado is a more appropriate forum. § 14-13-201(1)(c) ; or
• No court of any other state would have jurisdiction under subsections 14-13-201(1)(a), (b), or (c), or any substantially similar provision. § 14-13-201(1)(d).
1. Home State Jurisdiction
¶ 11 The UCCJEA prioritizes home state jurisdiction over all other jurisdictional bases for initial parental responsibilities orders. See § 14-13-201 cmt. n.1; Madrone, ¶ 11. And it is only when a child has no home state or the child's home state has declined to exercise its jurisdiction that a court looks to the other factors enumerated in subsections 14-13-201(1)(b), (c), and (d). See § 14-13-201(1) & cmt. n.2; Madrone, ¶ 14 ; Brandt v. Brandt, 2012 CO 3, ¶ 24, 268 P.3d 406.
¶ 12 The district court found, and both parties concede, that Idaho, where the parties and B.C.B. had lived for seven and one-half months after B.C.B. was born, was B.C.B.'s home state, and that neither Colorado, where the parties and B.C.B. had lived for only two and one-half months before the action was commenced, nor Massachusetts, where mother and B.C.B. had lived for only one month before the action was commenced, was the child's home state. See § 14-13-102(7)(a), C.R.S. 2014 (" 'Home state' means the state in which a child lived with a parent ... for at least one hundred eighty-two consecutive days immediately before the commencement of a child-custody proceeding."). It is also undisputed that Idaho was not asked, and therefore did not decline, to exercise its home state jurisdiction on the ground that Colorado or Massachusetts was a more appropriate forum.
¶ 13 If Idaho was actually B.C.B.'s home state, the Colorado district court could not have had jurisdiction under the UCCJEA to determine an initial parental responsibilities allocation for the child, because Idaho did not first decline it. See § 14-13-201(1) & cmt. n.2; see also § 14-13-206 cmt., C.R.S. 2014 ("If there is a home State, there can be no exercise of significant connection jurisdiction in an initial child custody determination...."); In re Parental Responsibilities Concerning L.S. , 257 P.3d 201, 209 (Colo. 2011) (applying Nebraska's substantially similar version of section 14-13201(1) and holding that because Colorado and not Nebraska was the child's home state, Nebraska could only exercise jurisdiction if Colorado had first declined it on the ground that Nebraska was the more appropriate forum).
¶ 14 However, because neither the parties nor B.C.B. still lived in Idaho when father petitioned for parental responsibilities, Idaho was not B.C.B.'s home state for purposes of the UCCJEA. See § 1413-102(7)(a) (defining home state as the state where the child and a parent lived for 182 consecutive days "immediately before" the action was commenced); § 14-13-201(1)(a) (providing that a state has jurisdiction to make an initial child custody determination if it was the child's home state on the date the proceeding was commenced or if it was the home state within 182 days before the proceeding starts and the child is absent from the state but a parent continues to live there ); cf. Gerhauser v. Van Bourgondien, 767 S.E.2d 378, 390 (N.C. Ct. App. 2014) (noting, under North Carolina's similar UCCJEA provisions, that although Utah had been the children's home state within six months before the proceeding started, no parent continued to live in Utah, so Utah could not have home state jurisdiction).
¶ 15 Further, because on the date father petitioned for parental responsibilities the child had not lived in either Colorado or Massachusetts for the 182-day period necessary to establish home state jurisdiction, neither of these states was the child's home state. See § 14-13-102(7)(a). Thus, the child had no home state for UCCJEA purposes when this action was filed. See Gerhauser, 767 S.E.2d at 390.
2. Significant Connection Jurisdiction
¶ 16 Despite the district court's legal error in determining that Idaho was B.C.B.'s home state, the court properly proceeded alternatively under section 14-13-201(1)(b) -considering whether B.C.B. and his parents had a significant connection with Colorado and whether substantial evidence concerning B.C.B. was located here-in determining *931 whether to exercise jurisdiction. See § 1413-201(1)(b) & cmt. n.2 (a significant connections state can assume jurisdiction when there is no home state and the child and a parent have a significant connection with the state and substantial evidence concerning the child's care, protection, training, and personal relationships exists there); see also Gerhauser, 767 S.E.2d at 390.
¶ 17 Because the court's factual findings as to the lack of a significant connection with Colorado or of substantial evidence here are supported by the record, we may not disturb them. See Gebhardt v. Gebhardt, 198 Colo. 28, 30, 595 P.2d 1048, 1050 (1979). B.C.B. and the parties lived in Colorado for only six weeks before mother and B.C.B. left for Massachusetts, and for only two and one-half months before father initiated the Colorado parental responsibilities action. The record from the hearing reflects that, as the district court found, B.C.B. had had little to no contact with father's extended family and friends in Colorado after B.C.B. moved here and before mother took him to Massachusetts.
¶ 18 Mother testified that she had no family, only one friend, and no job in Colorado. She described B.C.B.'s connections with her extended family in Massachusetts, including with her mother, who first established contact with B.C.B. by coming to Idaho when he was born to assist mother with his care and has continued to assist mother and to be very involved in B.C.B.'s care.
¶ 19 We reject father's argument that the court improperly considered B.C.B.'s best interests when determining whether B.C.B. had a significant connection with Colorado and whether substantial evidence existed here. Although the requirement to consider a child's best interests has been eliminated from the significant connections analysis to avoid confusion between the jurisdictional issue and the later substantive custody determination, see § 14-13201(1)(b) & cmt. n.2, we do not agree that considering any evidence that might also be relevant to a best interests analysis "is prohibited," as father states, when determining significant connection jurisdiction. Indeed, the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (2012), which father further argues the district court did not sufficiently consider, expressly retains the requirement that the court consider the child's best interests when determining jurisdiction. See 28 U.S.C. § 1738A(c)(2)(B)(ii), (D)(ii).
¶ 20 And, in any case, the district court did not find that declining jurisdiction would be in B.C.B.'s best interests, nor did it apply the best interests factors in section 14-10-124, C.R.S. 2014.
¶ 21 The court did not err by considering that mother had historically been B.C.B.'s primary caregiver and finding that because she had limited or no connections with Colorado and was living in Massachusetts, B.C.B. also had more significant connections with Massachusetts than with Colorado. See § 14-13-201(1)(b)(I) (court considers whether the child and parents have a significant connection with Colorado). Nor did the court err by considering under section 14-13-201(1)(b)(II) that because mother has been B.C.B.'s primary caregiver, more substantial evidence concerning his care and personal relationships was available in Massachusetts than in Colorado. We note that the court expressly did not consider any contacts B.C.B. had established in Massachusetts during the period that the court had found mother had taken B.C.B. there.
¶ 22 Father cites no authority, and we are aware of none, supporting his argument that the district court reversibly erred under section 14-13-201(1)(b) by comparing B.C.B.'s connections and the amount of evidence available in Colorado as opposed to Massachusetts. Thus, we conclude that the court did not abuse its discretion in doing so.
¶ 23 In sum, we discern no abuse of discretion by the district court in declining to exercise jurisdiction under section 14-13-201(1)(b) because of B.C.B.'s lack of significant connections with Colorado and the lack of substantial evidence available in Colorado. See Hall v. Moreno, 2012 CO 14, ¶ 54, 270 P.3d 961 (under abuse of discretion standard, appellate court does not substitute its judgment for that of the district court, but rather merely reviews decision to ensure that court did not exceed bounds of rationally available choices). Because we conclude that Idaho *932 was not B.C.B.'s home state, but rather that B.C.B. had no home state for UCCJEA purposes, we affirm the district court's judgment declining jurisdiction. See In re Parental Responsibilities Concerning E.S., 264 P.3d 623, 625 (Colo. App. 2011).
3. Inconvenient Forum
¶ 24 Because the district court did not apply section 14-13-207, C.R.S. 2014, and its multiple factor test, or determine that Colorado was an inconvenient forum, we reject father's contention that the court erred by applying that statute.
4. Simultaneous Proceedings
¶ 25 Father's contention that the district court should have exercised jurisdiction under the simultaneous proceedings provision of the UCCJEA because the first action was filed in Colorado is unpersuasive. This provision does not, as father argues, require the court in the state where the first action was filed to take jurisdiction. See § 14-13-206(1)-(2). Rather, it requires the court where proceedings were later initiated to stay its action and communicate with the court in the state where proceedings were first filed. § 14-13-206(2); see T.L.B., ¶ 22.
¶ 26 The Massachusetts court complied with this requirement by conferring with the Colorado court and then vacating its temporary custody order and staying its proceedings until the Colorado court could determine jurisdiction. Thus, we perceive no error in how the two courts proceeded under the simultaneous proceedings provision.
5. Unjustifiable Conduct
¶ 27 Father's contention that the district court should have exercised jurisdiction over parental responsibilities for B.C.B. so as not to reward mother for her wrongful conduct in taking the child to Massachusetts is also unpersuasive.
¶ 28 The UCCJEA permits a court to decline jurisdiction if a person seeking to invoke it has engaged in unjustifiable conduct, which includes retaining a child in another state. See § 14-13-208(1) & cmt., C.R.S. 2014; see also L.S., 257 P.3d at 208. That was not the situation facing the Colorado district court in this case, however, as it was father who sought to invoke its jurisdiction. The statute does not contemplate a court taking jurisdiction based on a parent's unjustifiable conduct. See § 14-13-208 cmt. ("The focus in this section is on the unjustified conduct of the person who invokes the jurisdiction of the court."); cf . In re Marriage of Ben-Yehoshua, 91 Cal.App.3d 259, 154 Cal.Rptr. 80, 85-86 (1979) (holding that California's similar unjustifiable conduct provision has only been applied to deny jurisdiction when the wrongdoing parent is the one petitioning for it, and not against a wrongdoing parent who contests a petition for jurisdiction filed by the other parent).
¶ 29 We also reject father's related argument that the district court did not sufficiently consider the policies behind the Uniform Child Abduction Prevention Act (UCAPA), sections 14-13.5-101 to - 112, C.R.S. 2014, the PKPA, and UCCJEA, to prevent parental kidnapping and deter forum shopping, when determining its jurisdiction. The UCAPA addresses pre- and post-decree parental abduction prevention measures and not jurisdiction over an initial parental responsibilities determination. See UCAPA, prefatory note. Further, the UCAPA does not supersede or contradict the UCCJEA; rather, jurisdiction under the UCAPA is determined in accordance with the UCCJEA. § 14-13.5-105(1) & cmt., C.R.S. 2014. Thus, because we have concluded that the district court did not abuse its discretion under the UCCJEA, the UCAPA does not compel a different result.
¶ 30 The PKPA dictates whether a state must accord full faith and credit to another state's child custody determination. L.S., 257 P.3d at 207. The PKPA rules for when a state must do so are substantively identical to the jurisdictional provisions of section 1413-201(1). Id . at 206. As relevant here, a state must accord full faith and credit to another state's custody determination when the determination is consistent with the PKPA, meaning that (1) the other state is the child's home state; (2) there is no home state and the other state's assumption of jurisdiction is in the child's best interests *933 because the child and one parent have a significant connection with the state and substantial evidence is available in the state concerning the child's present and future care, protection, training, and personal relationships; or (3) it appears that no state has jurisdiction under the preceding provisions or a state that does have it has declined to exercise it because another state is a more appropriate forum. Id. ; see 28 U.S.C. § 1738A(c).
¶ 31 In this case, Colorado was not asked to give full faith and credit to a child custody determination from Massachusetts. Rather, the Massachusetts court vacated the temporary child custody order it had entered and stayed its proceedings so that the Colorado court could determine jurisdiction. And the Massachusetts court then did not take jurisdiction and resume its proceedings until the Colorado court had declined it. Accordingly, the PKPA does not dictate a different result. See 28 U.S.C. § 1738A(c)(2)(D) (a state has jurisdiction consistent with the PKPA when another state has declined to exercise jurisdiction on the ground that the first state is a more appropriate forum).
III. Appellate Attorney Fees
¶ 32 Mother requests an award of her attorney fees incurred on appeal, contending under C.A.R. 38(d) that father's appeal is frivolous and under section 14-10-119, C.R.S. 2014, that the parties' financial circumstances are disparate. We decline to award fees under either provision.
¶ 33 We acknowledge that we may award fees as a sanction even though we have upheld the district court's decision to decline jurisdiction on the merits. See In re Marriage of Barnes, 907 P.2d 679, 685 (Colo. App. 1995) (court may still award fees as sanction even when it lacks jurisdiction to determine the merits of the case). We decline to do so, however, because although father has not prevailed on his contentions, his appeal is not frivolous under C.A.R. 38(d) standards. See Mission Denver Co. v. Pierson, 674 P.2d 363, 365 (Colo. 1984) ("Standards for determining whether an appeal is frivolous should be directed toward penalizing egregious conduct without deterring a lawyer from vigorously asserting his client's rights.").
¶ 34 We also decline to award fees under section 14-10-119. See In re Marriage of Davis, 252 P.3d 530, 538 (Colo. App. 2011) (fee awards under section 14-10-119 are discretionary). Father has already incurred expenses and fees in connection with these proceedings. Moreover, mother and B.C.B. are able to live with her parents in Massachusetts, and her parents assist her significantly with B.C.B.'s care, thereby reducing her child care and living expenses.
IV. Conclusion
¶ 35 The judgment is affirmed.
JUDGE FOX and JUDGE NEY* concur.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S. 2014.